**Frank C. Gibson, OSB #792352**
fgibson@eugenelaw.com
**Jonathan M. Hood, OSB #133872**
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:    (541) 686-9160
Facsimile:    (541) 343-8693
Of Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **GREAT BOWERY INC.** d/b/a **TRUNK ARCHIVE,** | Case No.  6:20-cv-00009-MK |
| Plaintiff, | **DECLARATION OF JONATHAN M. HOOD IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **CASCADE DIGITAL MEDIA LLC;** and **DOES 1 through 10 inclusive,** | |
| Defendant. | |

I, Jonathan M. Hood, make the following declaration on personal knowledge:

1.     I am one of the attorneys for Defendant in this matter.

2.     Attached as Exhibit 1 a true and correct copy of Plaintiff's Complaint filed in this matter, including the exhibits attached to the Complaint.

3.     Attached as Exhibit 2 is a true and correct copy of Defendant's First Request for Production of Documents to Plaintiff, served on Plaintiff on August 19, 2020.

4.      Attached as Exhibit 3 is a true and correct copy of Plaintiff's Responses to Defendant's First Set of Requests for Production of Documents, received from Plaintiff on October 13, 2020.

5.      Attached as Exhibit 4 is a true and correct copy of Defendant's First Set of Interrogatories to Plaintiff, served on Plaintiff on August 19, 2020.

6.      Attached as Exhibit 5 is a true and correct copy of Plaintiff's Responses to Defendant's First Set of Interrogatories, received from Plaintiff on October 13, 2020.

7.      Attached as Exhibit 6 is a true and correct copy of Defendant's Second Request for Production of Documents to Plaintiff, served on Plaintiff on December 4, 2020.  As of the filing of this motion, Defendant has not yet received a written response to these document requests.

8.      Attached as Exhibit 7 is a true and correct copy of Defendant's Second of Interrogatories to Plaintiff, served on Plaintiff on December 4, 2020.  As of the filing of this motion, Defendant has not yet received a written response to these interrogatories.

9.      Attached as Exhibit 8 is a true and correct copy of a Certificate of Registration for Registration Number VA 1-977-805, produced by Plaintiff to Defendant on October 13, 2020.

10.     Attached as Exhibit 9 is a true and correct copy of an agreement dated January 1, 2015, between Condé Nast and AL Studio, LLC f/s/o Annie Leibovtiz, produced by Plaintiff to Defendant on October 13, 2020.

11.     Attached as Exhibit 10 is a true and correct copy of a document titled "Artist Agreement," produced by Plaintiff to Defendant on October 13, 2020.

12.     Attached as Exhibit 11 is a true and correct copy of a letter from Annie Leibovitz to an unknown party, dated June 12, 2018, produced by Plaintiff to Defendant on October 13, 2020.

13.     On January 31, 2021, I received an email from Plaintiff's counsel stating that she believed all relevant documents had been produced.

I hereby declare that the above statements are true to the best of my knowledge and belief and that I understand they are made for use as evidence in court and are subject to penalty of perjury.

DATED this 5th day of February, 2021.

HUTCHINSON COX

By:    s/Jonathan M. Hood
     Frank C. Gibson, OSB #792352
     Jonathan M. Hood, OSB #133872
     Of Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on February 5, 2021, I served or caused to be served a true and complete copy of the foregoing **DECLARATION OF JONATHAN M. HOOD IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** on the party or parties listed below as follows:

☒    Via CM / ECF Filing
☐    Via First Class Mail, Postage Prepaid
☐    Via Email
☐    Via Personal Delivery
☐    Via Facsimile

Mathew K. Higbee
Higbee & Associates
1504 Brookhollow Drive, Suite 112
Santa Ana, CA 92705
mhigbee@higbeeassociates.com
Facsimile: (714) 597-6559
Of Attorneys for Plaintiff

HUTCHINSON COX

By:   s/Frank C. Gibson
      Frank C. Gibson, OSB #792352
      Jonathan M. Hood, OSB #133872
      Of Attorneys for Defendant

1  Mathew K. Higbee, Esq., 241380
2  **HIGBEE & ASSOCIATES**
   1504 Brookhollow Dr., Suite 112
3  Santa Ana, CA 92705
   (714) 617-8350
4  (714) 597-6559 facsimile
5  Email: mhigbee@higbeeassociates.com

6  *Attorney for Plaintiff,*
7   GREAT BOWERY INC.
    d/b/a TRUNK ARCHIVE
8

9

10           **UNITED STATES DISTRICT COURT**
                  **DISTRICT OF OREGON**
11

12  GREAT BOWERY INC. d/b/a TRUNK      Case No. 6:20-cv-00009
    ARCHIVE,
13

14                    Plaintiff,       **COMPLAINT FOR DAMAGES AND
                                       INJUNCTIVE RELIEF FOR
15  v.                                 COPYRIGHT INFRINGEMENT**

16                                     **DEMAND FOR JURY TRIAL**
    CASCADE DIGITAL MEDIA LLC;
17  and DOES 1 through 10 inclusive,

18
                      Defendant.
19

20

21

22

23      Plaintiff, GREAT BOWERY INC. d/b/a TRUNK ARCHIVE ("Trunk

24  Archive" or "Plaintiff"), for its complaint against Defendant, CASCADE DIGITAL

25  MEDIA LLC, ("Defendant") alleges as follows:

26

27

28

                                          1

Exhibit 1
Page 1 of 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

1.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 *et seq.*

2.    This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

3.    This Court has personal jurisdiction over Defendant because Defendant conducts business and/or resides within this judicial district, Defendants' acts of infringement complained of herein occurred in this judicial district, and Defendants caused injury to Plaintiff within this judicial district.

4.    Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. Alternatively, venue is also proper pursuant to 28 U.S.C. § 1400(b) because the Defendant resides and has a regular and established place of business in this judicial district.

**PARTIES**

5.    Plaintiff Great Bowery, Inc. d/b/a Trunk Archive is a Delaware corporation duly organized by law, having a place of business at 190 Bowery New York, NY 10012.

6.    Defendant Cascade Digital Media LLC ("Defendant" or "Cascade Media") owns and operates the website, http://buzzfortoday.com/ (the "Website"),

which covers news relating to celebrities, political, finance, lifestyle, humor, and inspirational stories.

7.    Defendants maintain a principal place of business at 33465 McKenzie View Drive, Eugene, OR 97408.  Attached hereto as Exhibit A is a true and correct copy of Cascade Media's Statement of Information filed with the Oregon Secretary of State and their Terms of Use.

8.    Trunk Archive is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10 inclusive, and for that reason, sued such Defendants under fictitious names.  Plaintiff is informed and believes and on that basis alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants.  Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously named Defendants are ascertained.  As alleged herein, "Defendant" shall mean all named Defendants and all fictitiously named Defendants.

9.    For the purposes of this Complaint for Damages, unless otherwise indicated, "Defendant" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogates, representatives and insurers of Defendant(s) named in this caption.

## **FACTUAL ALLEGATIONS**

***Trunk and the Photographs Forming the Subject Matter of this Complaint***

3

Exhibit 1
Page 3 of 22

10.    Trunk Archive is a full service photography licensing agency representing some of the most prominent photographers and iconic images in the world.

11.    Trunk Archive's catalogue features imagery from hundreds of prominent artists and designers that are available for license.

12.    One of the artists whom Trunk Archive represents is New York based photographer Annie Leibovitz ("Leibovitz").

13.    Leibovitz is primarily known for her celebrity portraiture, and her work has been used on numerous album covers and magazines.

14.    Perhaps her most iconic photograph is that of musician John Lenon and his wife Yoko Ono taken for *Rolling Stone* magazine mere hours before Lenon was shot and killed in front of his apartment on December 8, 1980.

15.    In 2014, Leibovitz took a series of photographs of Caitlyn Jenner published online by *Vanity Fair* on June 25, 2015, with a "VF" watermark at the bottom right corner and the caption "PHOTOGRAPHED BY ANNIE LEIBOVITZ" for each photograph. *See* https://www.vanityfair.com/hollywood/2015/06/caitlyn-jenner-bruce-cover-annie-leibovitz.

16.    Attached hereto as Exhibit B are true and correct copies of the original images at issue of Caitlyn Jenner.

17.    Leibovitz registered the Images with United States Copyright Office

under registration number VA 2-977-805 with an effective registration date of August 7, 2015.

18.     Leibovitz subsequently granted Trunk Archive the exclusive right to license the Image.

### *Defendant's Infringement of the Images*

19.     On or about April 26, 2019, Trunk Archive discovered that Defendant had used the Images without authorization on its Website in a post about celebrity news (the "Infringing Post").   True and correct copies of the Infringing Post featuring Leibovitz's Images are attached hereto as Exhibit C.

20.     On information and belief, Defendants made unauthorized copies of the Images, and uploaded them to the server for Defendant's Website.

21.     Trunk Archive never authorized Defendants to use the Images in any manner.

22.     On information and belief, Defendant knew that it did not have permission to use the Images on the Website and willfully infringed Leibovitz's mages.

### FIRST CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 101 *et seq.*

23.      Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

24.     Plaintiff did not consent to, authorize, permit, or allow in any manner

the said use of Plaintiff's unique and original Images.

25.    Plaintiff is informed and believes and thereon alleges that the Defendant willfully infringed upon the copyrighted Images in violation of Title 17 of the U.S. Code, in that it used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, the original and unique Images of the Plaintiff without Plaintiff's consent or authority, by using it in the Infringing Post on Defendant's Website.

26.    As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to any actual damages pursuant to 17 U.S.C. §504(b), or statutory damages in an amount up to $150,000.00 pursuant to 17 U.S.C. § 504(c) per work infringed.

27.    As a result of the Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C § 505 from Defendants.

28.    Plaintiff is also entitled to injunctive relief to prevent or restrain infringement of his copyrights pursuant to 17 U.S.C. § 502.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

- For actual damages or statutory damages against Defendants in an amount up to $150,000.00 for each infringement pursuant to 17 U.S.C. § 504(c);

- For general and special damages against Defendants, according to proof,

1   together with interest thereon at the maximum legal rate;

2   • For costs of litigation and reasonable attorney's fees against Defendants

3

4   pursuant to 17 U.S.C. § 505;

5   • For an injunction preventing Defendants from further infringement of all

6   copyrighted works of the Plaintiff pursuant to 17 U.S.C. § 502; and

7

8   For any other relief the Court deems just and proper.

9

10  Dated: January 2, 2020                        Respectfully submitted,

11
                                                  **/s/ Mathew K. Higbee**
12                                                Mathew K. Higbee, Esq.
                                                  Cal. Bar No. 241380
13                                                **HIGBEE & ASSOCIATES**
14                                                1504 Brookhollow Dr., Ste 112
                                                  Santa Ana, CA 92705-5418
15                                                (714) 617-8350
16                                                (714) 597-6729 facsimile

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

3
      Plaintiff, Great Bowery, Inc. d/b/a Trunk Archive, hereby demands a trial by

4
jury in the above captioned matter.

5

6
Dated: January 2, 2020                      Respectfully submitted,

7

8
**/s/ Mathew K. Higbee**

9
Mathew K. Higbee, Esq.
Cal. Bar No. 241380

10
**HIGBEE & ASSOCIATES**

11
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418

12
(714) 617-8350
(714) 597-6729 facsimile

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"

Exhibit 1
Page 9 of 22

12/3/2019

Case 6:20-cv-00009-MK    Document 1-1    Filed 01/02/20    Page 2 of 11
Case 6:20-cv-00009-MK    Document Business Registry Business Name Search    Page 14 of 81

OREGON SECRETARY OF STATE
► **Corporation Division**

HOME

business information center | business name search | oregon business guide

referral list | business registry/renewal | forms/fees | notary public

uniform commercial code | uniform commercial code search | documents & data services

## Business Name Search

| | Business Entity Data | | | | | 12-03-2019 17:19 |
|---|---|---|---|---|---|---|

New Search    Printer Friendly

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 986638-92 | DLLC | ACT | OREGON | 12-30-2013 | 12-30-2019 | YES |
| **Entity Name** | CASCADE DIGITAL MEDIA LLC | | | | | |
| **Foreign Name** | | | | | | |

### Online Renewal:

[ Renew Online ]

Click here to generate and print an annual report.

## Associated Names

New Search    Printer Friendly

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | | | |
|---|---|---|---|---|---|---|
| **Addr 1** | 33465 MCKENZIE VIEW DR | | | | | |
| **Addr 2** | | | | | | |
| **CSZ** | EUGENE | OR | 97408 | | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | | Start Date | 12-30-2013 | Resign Date |
|---|---|---|---|---|---|---|
| **Name** | JEFF | GEORGE | LEISHMAN | | | |
| **Addr 1** | 33465 MCKENZIE VIEW DR | | | | | |
| **Addr 2** | | | | | | |
| **CSZ** | EUGENE | OR | 97408 | | Country | UNITED STATES OF AMERICA |

| Type | MAL | MAILING ADDRESS | | | | |
|---|---|---|---|---|---|---|
| **Addr 1** | PO BOX 71787 | | | | | |
| **Addr 2** | | | | | | |
| **CSZ** | SPRINGFIELD | OR | 97475 | | Country | UNITED STATES OF AMERICA |

| Type | MGR | MANAGER | | | Resign Date | |
|---|---|---|---|---|---|---|
| **Name** | JEFF | | LEISHMAN | | | |
| **Addr 1** | 969 MCKENZIE VIEW DRIVE | | | | | |
| **Addr 2** | | | | | | |

12/3/2019  Current Registry Business Name Search

Case 6:20-cv-00009-MK   Document 1-1   Filed 01/02/20   Page 3 of 11
Case 6:20-cv-00009-MK   Document 1   Filed 02/20/21   Page 15 of 81

| CSZ | EUGENE | OR | 97408 | | Country | UNITED STATES OF AMERICA |
|-----|--------|-----|-------|--|---------|--------------------------|

<br>

| New Search | Printer Friendly | Name History | | | |
|------------|------------------|--------------|--|--|--|
| **Business Entity Name** | | | **Name Type** | **Name Status** | **Start Date** | **End Date** |

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|----------------------|-----------|-------------|------------|----------|
| CASCADE DIGITAL MEDIA LLC | EN | CUR | 12-30-2013 | |

Please read before ordering Copies.

| New Search | Printer Friendly | | Summary History | | | |
|------------|------------------|--|-----------------|--|--|--|

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|-----------------|--------|------------------|----------------|--------|-------------------|--------------|
| | AMENDED ANNUAL REPORT | 12-01-2018 | | FI | | |
| | REINSTATEMENT AMENDED | 10-22-2018 | | FI | | |
| | ADMINISTRATIVE DISSOLUTION | 03-01-2018 | | SYS | | |
| | ANNUAL REPORT PAYMENT | 12-16-2016 | | SYS | | |
| | ANNUAL REPORT PAYMENT | 01-26-2016 | | SYS | | |
| | AMENDED ANNUAL REPORT | 12-26-2014 | | FI | | |
| | ARTICLES OF ORGANIZATION | 12-30-2013 | | FI | Agent | |

---

About Us | Announcements | Laws & Rules | Feedback
Policy | SOS Home | Oregon Blue Book | Oregon.gov

For comments or suggestions regarding the operation of this site,
please contact : corporation.division@state.or.us

© 2019  Oregon Secretary of State.  All Rights Reserved.

12/3/2019

Case 6:20-cv-00009-MK    Document 1-1    Filed 01/02/20    Page 4 of 11
Case 6:20-cv-00009-MK    Document 1-1    Filed 02/05/21    Page 16 of 81



| HOME | CELEBRITIES | NEWS | POLITICS | FINANCE | LIFESTYLE | HUMOR | INSPIRATIONAL | VIRAL BUZZ |

🏠 Home » Terms Of Use

## Terms Of Use

Before using this web site please read the terms and conditions as set forth below. By using this web site or related properties you agree to be bound by these terms of use. **BuzzForToday.Com** and their wholly owned web properties, reserve the right to revise these terms at any time without notice and, by using this web site subsequent to the revision of the terms of use, you agree to be bound by such changes. If you find the terms to be unacceptable, you should terminate your use of this web site and all related web properties immediately.

1. **No Representation or Warranty**

1.1 The documents, graphics and images published at **BuzzForToday.com** could include inaccuracies or typographical errors. Additionally, we reserve the right to modify the information contained in this Web Site without notice. Content is provided by numerous resources and contains expressions and viewpoints that some might find objectionable.

To the extent permitted by the laws of the united states, information on this web site is provided "as is" without warranty, either express or implied. Including, but not limited to, the implied warranties of merchantability, fitness for a particular purpose, or non-infringement.

1.2 This site may contain links to other Web Sites, which are completely independent of **BuzzForToday.com**. We make no representation or warranty as to the accuracy of content, completeness or authenticity of the information or opinions contained in any such linked Web Site.

1. **Confidentiality**

2.1 Your confidential use of this site cannot be guaranteed by us. We shall not be responsible for any harm that you or any person may suffer as a result of a breach of confidentiality in respect to your use of this site.

1. **Limitation of Damages**

3.1 In no event will we, our officers, employees, contractors, subcontractors, suppliers, agents, affiliates, subsidiaries, successors or assigns be liable to any party for any direct, indirect, or other consequential loss for any use of this web site, or use of any other linked website, even if we are expressly advised of the possibility of such loss. The term "loss" includes, without limitation, legal fees, any lost profits, business interruption and loss of programs or other data on your information handling system.

1. **Ownership**

4.1 All right, title and interest (including all copyrights, trademarks and other intellectual property rights) in this Web Site belong to Cascade Digital Media. In addition, the names, images and other indicia identifying our products and services are our proprietary marks. All copyrights, trademarks and other intellectual property rights referred to in this Web Site belong to their respective owners.

1. **License**

5.1 Except as expressly provided in clause 5.2, nothing contained in this Web Site shall be construed as conferring any license or right, expressly, by implication, or otherwise, under any of our intellectual property rights, or under any third party's intellectual property rights, and no part of this Web Site may be reproduced, republished, copied, transmitted, or distributed in any form or by any means without prior written notice.

5.2 You are hereby granted a nonexclusive, non-transferable, limited license to view, reproduce, print, and distribute materials retrieved from this Web Site provided (a) such materials are used only for informational, non-commercial purposes, and (b) you do not remove or obscure the copyright notice or other notices.

1. **Linking to this Web Site**

12/3/2019
Case 6:20-cv-00009-MK    Document 1-1    Filed 01/02/20    Page 5 of 11
Case 6:20-cv-00009-MK    Document 1-5 Terms of Use Filed 02/05/21    Page 17 of 81

6.1 You may provide links to **BuzzForToday.com** provided (a) you do not remove or obscure our copyright notice, or other notices on this Web Site, (b) you will upon written notice, discontinue providing a link to **BuzzForToday.com** if instructed to do so by us.

1. **Governing Laws in Case of Dispute**

7.1 These Terms and Conditions shall be governed by and construed in accordance with the laws of the State or Oregon as they apply to agreements made and solely performed therein.

Copyright 2019 - BuzzForToday.com - All right reserverd | Privacy Policy | Terms Of Use | Contact Us

# Exhibit "B"

Exhibit 1
Page 14 of 22



Exhibit 1
Page 15 of 22



Exhibit 1
Page 16 of 22

# Exhibit "C"

Exhibit 1
Page 17 of 22



Exhibit 1
Page 18 of 22



Exhibit 1
Page 19 of 22

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GREAT BOWERY INC. d/b/a TRUNK ARCHIVE

**(b)** County of Residence of First Listed Plaintiff NY County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Higbee & Associates. 1504 Brookhollow Dr., Ste 112. Santa Ana, CA. 92705

## DEFENDANTS
CASCADE DIGITAL MEDIA LLC; and DOES 1 through 10 inclusive

County of Residence of First Listed Defendant Lane County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☒ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 17 U.S. Code § 101

Brief description of cause: Copyright Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER 6:20-cv-00009

DATE 12/26/2019

SIGNATURE OF ATTORNEY OF RECORD /s Mathew K. Higbee

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Exhibit 1
Page 20 of 22

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

### District of Oregon

|  |  |
|---|---|
| GREAT BOWERY INC. d/b/a TRUNK ARCHIVE,<br><br>*Plaintiff(s)*<br>v.<br>CASCADE DIGITAL MEDIA<br>LLC; and DOES 1 through 10 inclusive,<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 6:20-cv-00009<br>)<br>)<br>)<br>)<br>) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* CASCADE DIGITAL MEDIA LLC
33465 MCKENZIE VIEW DRIVE
EUGENE, OR 97408

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Mathew K. Higbee
Saba A. Basria
THE LAW FIRM OF HIGBEE AND ASSOCIATES
1504 Brookhollow Dr., Ste. 112
Santa Ana, CA 92705

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                                    *Signature of Clerk or Deputy Clerk*

Exhibit 1
Page 21 of 22

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 6:20-cv-00009

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Exhibit 1
Page 22 of 22

**Frank C. Gibson, OSB #792352**
fgibson@eugenelaw.com
**Jonathan M. Hood, OSB #133872**
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:     (541) 686-9160
Facsimile:     (541) 343-8693
Of Attorneys for Defendant

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **GREAT BOWERY INC.** d/b/a **TRUNK ARCHIVE,** | Case No.  6:20-cv-00009-MK |
| Plaintiff, | **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |
| vs. | |
| **CASCADE DIGITAL MEDIA LLC;** and **DOES 1 through 10 inclusive,** | |
| Defendant. | |

To:  Plaintiff Great Bowery Inc., dba Trunk Archive, and its attorneys of record:

Pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, Defendant Cascade Digital Media LLC requests that Plaintiff produce the documents described below, in accordance with the definitions and instructions contained herein, for inspection and copying, on or before 30 days from the date of service, at the offices of Hutchinson Cox, 940 Willamette Street, Suite 400, Eugene, Oregon 97401.

## I.     INSTRUCTIONS AND DEFINITIONS

Each request below extends to any documents in the possession, custody or control of Plaintiff.  The document is deemed to be in the possession, custody or control of Plaintiff if it is in the physical custody of Plaintiff, or it is in the physical custody of any other person and

Page 1 – DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
        TO PLAINTIFF

Exhibit 2
Page 1 of 6

Plaintiff (a) owns such documents in whole or in part; (b) has a right to use, inspect, examine or copy such document on any terms; (c) has any understanding, express or implied, that Plaintiff may use, inspect, examine or copy such document on any terms; or (d) has, as a practical matter, been able to use, inspect, examine or copy such document.

    A.      "Plaintiff" includes Plaintiff Great Bowery Inc., dba Trunk Archive named herein as such, but also any predecessors, attorneys, partners, employees, representatives, agents, and/or any person or entity acting on its behalf.

    B.      "Defendant" includes Cascade Digital Media LLC, and any employees, agents, or others acting on its behalf.

    C.      "Document" refers to any materials containing information, data, or data compilation no matter how recorded or stored, including, but not limited to, emails, text messages, voicemails, audio or video recordings, photographs, drawings, writings, and social media posts, whether stored on paper, as electronically stored information (ESI), or in another physical form.

    D.      "Communication" refers to the sharing and/or transfer of information, data, or data compilation between two or more people, such as memoranda, letters, emails, text messages, documents referencing verbal conversations, and communications sent via internet-based messaging systems (e.g., Facebook Messenger or WhatsApp).

    E.      As to any document that Plaintiff fails to produce, state the location where such document can be found, the name of the possessor, when such documents left Plaintiff's possession or control and the reasons why Plaintiff cannot produce such document.

    F.      If any document is withheld under claim of privilege, Plaintiff is required to identify its author, addressee, recipient and content to allow the matter to be brought before the court as well as the nature of the privilege asserted and the factual basis for the claim.

## II.     REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**  A true and correct copy of the CD filed with the U.S. Copyright Office for the registration referenced in paragraph 17 of the Complaint.  All

Page 2 – DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
       TO PLAINTIFF

Exhibit 2
Page 2 of 6

original metadata must be retained when creating the copy, including the original creation dates of the image files.

    **RESPONSE:**

    **REQUEST FOR PRODUCTION NO. 2:**  A copy of the final, issued copyright registration referenced in paragraph 17 of the Complaint.

    **RESPONSE:**

    **REQUEST FOR PRODUCTION NO. 3:**  All written agreements authorizing Trunk Archive to act as Annie Leibovitz's agent and/or licensor.

    **RESPONSE:**

    **REQUEST FOR PRODUCTION NO. 4:**  All written agreements granting Trunk Archive any rights in the copyright registration referenced in paragraph 17 of the Complaint and/or the images at issue in this litigation.

    **RESPONSE:**

    **REQUEST FOR PRODUCTION NO. 5:**  All written agreements between Annie Leibovitz and any third parties granting any rights in the copyright registration referenced in paragraph 17 of the Complaint and/or the images at issue in this litigation.

    **RESPONSE:**

    **REQUEST FOR PRODUCTION NO. 6:**  All other written agreements assigning, transferring, or otherwise conveying any rights in the copyright registration referenced in paragraph 17 of the Complaint or the images at issue in this litigation from the date that the photographs were created to present.

    **RESPONSE:**

    **REQUEST FOR PRODUCTION NO. 7:**  All written agreements involving *Vanity Fair*'s use of Annie Leibovitz's photography services and/or photographs in the June 25, 2015, edition of *Vanity Fair*.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:** All communications between, among, or including Trunk Archive, *Vanity Fair*, and/or Annie Leibovitz regarding Annie Leibovitz's photography services and/or photographs in connection with *Vanity Fair*'s June 25, 2015, edition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:** All communications between, among, or including Trunk Archive, *Vanity Fair*, and/or Annie Leibovitz regarding the copyright registration referenced in paragraph 17 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** All communications from January 2018 to present to third parties asserting or alleging a claim of copyright infringement regarding the copyright registration referenced in paragraph 17 of the Complaint and/or the images at issue in this litigation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:** All documents showing the current licensing fees for use of the images at issue in this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** Monthly financial reports, from June 2015 to present, showing the income Trunk Archive received from its licensing of the images at issue in this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:** A report listing all individuals and entities who have purchased or otherwise acquired a license to use the images at issue in this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:** All documents supporting Plaintiff's claim for damages.

**RESPONSE:**

Page 4 – DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
      TO PLAINTIFF

Exhibit 2
Page 4 of 6

**REQUEST FOR PRODUCTION NO. 15:** All documents Plaintiff receives from third parties pursuant to a subpoena issued in this action.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:** All documents showing that Higbee & Associates has been authorized by the copyright owner to act as Plaintiff's attorney in this litigation.

**RESPONSE:**

DATED this 19th day of August, 2020.

HUTCHINSON COX


By:   s/Jonathan M. Hood
   Frank C. Gibson, OSB #792352
   Jonathan M. Hood, OSB #133872
   Of Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on August 19, 2020, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** on the party or parties listed below as follows:

☐    Via CM / ECF Filing

☒    Via First Class Mail, Postage Prepaid

☒    Via Email

☐    Via Personal Delivery

☐    Via Facsimile


Mathew K. Higbee
Higbee & Associates
1504 Brookhollow Drive, Suite 112
Santa Ana, CA 92705
mhigbee@higbeeassociates.com
Facsimile: (714) 597-6559

HUTCHINSON COX

By:  s/Jonathan M. Hood
     Frank C. Gibson, OSB #792352
     Jonathan M. Hood, OSB #133872
     Of Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

GREAT BOWERY INC. d/b/a TRUNK
ARCHIVE,

                          Plaintiff(s),

  v.

CASCADE DIGITAL MEDIA LLC; and
DOES 1 through inclusive,
                          Defendant.

**CIVIL ACTION NO.**

6:20-cv-00009-MK

**PLAINTIFF'S RESPONSES TO
DEFENDANT'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS**

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff Great Bowery Inc. d/b/a Trunk Archive ("Trunk Archive") hereby submits these supplemental responses to Defendant Cascade Digital Media, LLC for the First Set of Requests for Production of Documents pursuant to the Local Rules and Fed. R. Civ. P. 26(b).

## GENERAL RESPONSES

Responding Party submits these responses subject to, without waiver of, and expressly preserving, the right at any time to amend, revise, correct, supplement, or clarify any of the objections and responses herein at any time, up to and including trial. Responding Party also submits these responses subject to, without waiver of, and expressly preserving: (a) any objections as to the competency, relevance, materiality, privilege, or admissibility of any of the responses or any of the documents identified in any response hereto; (b) the right to object to other discovery procedures involving or relating to the subject matter of the responses herein; (c) the right to object on any ground, at any time, to such other or supplemental Interrogatories Propounding Party may at any time propound, involving or relating to the subject matter of the

First Set of Interrogatories. Responding Party hereby expressly preserves all rights, remedies and recourse against Propounding Party with respect to discovery and otherwise. Inadvertent production, revelation or identification of privileged information by Responding Party is not a waiver of any applicable privilege.

Additionally, Responding Party has not completed investigation of the facts and documents relating to this action and has not completed trial preparation. Consequently, Responding Party responds to each Request for Production to the best of Responding Party's present, existing knowledge. Responding Party reserves the right to amend, revise, correct, supplement, or clarify any of the objections and responses herein pursuant to any facts or information gathered at any time subsequent to the date of this response. Moreover, the responses contained herein are not intended to and shall not preclude Responding Party from making any contentions or relying upon any facts or documents at trial, whether or not identified or relied upon herein, which result from subsequently discovered information and/or evidence.

## <u>GENERAL OBJECTIONS</u>

Responding Party makes the following general objections with respect to the information and/or the documents that may be produced:

1.    Responding Party objects to each request to the extent that it requests information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege and Responding Party will not produce such information. To the extent any information is inadvertently produced, such production is not intended as any waiver of the attorney-client privilege or any applicable privilege.

2.    Responding Party objects to the requests on the ground that the information and/or documents sought are not relevant to the subject matter of this action and do not fall within the scope of discoverable evidence as set forth in the Federal Rules of Civil Procedure.

3.    Responding Party objects to the requests on the ground that the requests are overbroad, vague and ambiguous.

4.      Responding Party objects to the requests on the ground that the requests seek information and/or documents that are equally available to the requesting party, its agents, privies and assigns.

5.      Responding Party reserves the right to object to the introduction into evidence, at the trial or arbitration or any other proceeding, of any information and/or documents produced pursuant to the requests on any ground, including, without limitation, applicable privilege, competence, relevance, materiality, propriety information and admissibility.

6.      Responding Party objects to the requests on the ground that the information and/or documents requested have been previously produced and/or made available in this litigation or prior to this litigation.

7.      Responding Party objects to the requests on the ground that the individual requests are compound, conjunctive or disjunctive.

8.      Responding Party objects to the requests on the ground that the individual requests are not complete in and of themselves and are, therefore, impermissible.

9.      Responding Party objects to the requests on the ground that the individual requests call for a legal conclusion or an expert opinion.

10.     Nothing herein shall be construed as an admission respecting the admissibility, truth, authenticity, accuracy or relevance of any documents.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**RFP 1**: A true and correct copy of the CD filled with the U.S. Copyright Office for the registration referenced in paragraph 17 of the Complaint.  All original metadata must be retained when creating the copy, including the original creation dates of the image files.

**RESPONSE**: Plaintiff Trunk Archive does not have the requested files in its possession, custody, or control.

**RFP 2**: A copy of the final, issued copyright registration referenced in paragraph 17 of the Complaint.

PLAINTIFF'S RESPONSES TO DEFENDANT'S RFPS

Exhibit 3
Page 3 of 9

**RESPONSE**: Plaintiff has included the copyright registration as part of its production.

**RFP 3**: All written agreements authorizing Trunk Archive to act as Annie Leibovitz's agent and/or licensor.

**RESPONSE**: Plaintiff has provided its Artist Agreement with Annie Leibovitz ("annie&trunk") as proof that it is the exclusive licensor for her images and an Authorization Letter ("Annie Copyright Document") granting Trunk the ability to pursue copyright infringement claims on her behalf.

**RFP 4**: All written agreements granting Trunk Archive any rights in the copyright registration referenced in paragraph 17 of the Complaint and/or the images at issue in this litigation.

**RESPONSE**: Plaintiff has provided its Artist Agreement with Annie Leibovitz and Authorization Letter that would be applicable to the copyright registration and images at issue in this litigation.

**RFP 5**: All written agreements between Annie Leibovitz and any third parties granting any rights in the copyright registration referenced in paragraph 17 of the Complaint and/or the images at issue in this litigation.

**RESPONSE**: The images have never been licensed outside of Condé Nast.  The agreement with Conde Nast has been provided with this production ("CondeNastUS_2015_01_01").

**RFP 6**: All other written agreements assigning, transferring, or otherwise conveying any rights in the copyright registration referenced in paragraph 17 of the Complaint or the images at issue in this litigation from the date that the photographs were created to present.

**RESPONSE**: Plaintiff objects that this request is redundant with the previous request, but nonetheless answers that the images have never been licensed outside of Condé Nast, and that the agreement with Condé Nast has been provided with this production.

PLAINTIFF'S RESPONSES TO DEFENDANT'S RFPS

Exhibit 3
Page 4 of 9

**RFP 7**: All written agreements involving *Vanity Fair's* use of Annie Leibovitz's photography services and/or photographs in the June 25, 2015, edition of *Vanity Fair*.

**RESPONSE**: Vanity Fair is published by Condé Nast, and the agreement with Condé Nast has been included in this production.

**RFP 8**: All communications between, among, or including Trunk Archive, *Vanity Fair*, and/or Annie Leibovitz regarding Annie Leibovitz's photography services and/or photographs in connection with *Vanity Fair's* June 25, 2015 edition.

**RESPONSE**: There are no communications between Trunk Archive, *Vanity Fair*, and/or Annie Leibovitz with respect to her photography services for the June 25, 2015 edition of *Vanity Fair*. Should it later become apparent that such communications do exit, Plaintiff reserves the right to supplement its responses.

**RFP 9**: All communications between, among, or including Trunk Archive, *Vanity Fair*, and/or Annie Leibovitz regarding the copyright registration referenced in paragraph 17 of the Complaint.

**RESPONSE**: There are no communications between Trunk Archive, *Vanity Fair*, and/or Annie Leibovitz with respect to her copyright registration for these images.  Should it later become apparent that such communications do exit, Plaintiff reserves the right to supplement its responses.

**RFP 10**: All communications from January 2018 to present to third parties asserting or alleging a claim of copyright infringement regarding the copyright registration referenced in paragraph 17 of the Complaint and/or the images at issue in this litigation.

**RESPONSE**: Plaintiff objects in that communications to third parties unaffiliated with this lawsuit are irrelevant and overbroad.

PLAINTIFF'S RESPONSES TO DEFENDANT'S RFPS

Exhibit 3
Page 5 of 9

**RFP 11**:  All documents showing the current licensing fees for use of the images at issue in this lawsuit.

**RESPONSE:**  The images have never been licensed outside of Condé Nast.  Therefore, there are no licensing fees specific to these images for third parties.  However, Plaintiff's counsel has already provided comparable licensing to Defendant's counsel.

**RFP 12**:  Monthly financial reports, from June 2015 to present showing the income Trunk Archive received from its licensing of the images at issue in this lawsuit.

**RESPONSE**:  As stated above, the images have never been licensed outside of Condé Nast; therefore, there is no licensing revenue generated from the image.

**RFP 13**:  A report listing all individuals and entities who have purchased or otherwise acquired a license to use the images at issue in this lawsuit.

**RESPONSE**:  The images have never been licensed outside of Condé Nast; therefore, Plaintiff does not have a list of individuals or entities who have purchased or acquired a license to use the image in this lawsuit.

**RFP 14**:  All documents supporting Plaintiff's claim for damages.

**RESPONSE**:  Plaintiff's comparable licensing previously supplied is re-included in this production.

**RFP 15**:  All documents Plaintiff receives from third parties pursuant to a subpoena issued in this action.

**RESPONSE**:  Plaintiff objects in that this request is vague, ambiguous, and overbroad.  In any event, a subpoena has not been issued in this action.

**RFP 16**:  All documents showing that Higbee & Associates has been authorized by the copyright owner to act as Plaintiff's attorney in this litigation.

**RESPONSE**:  The Authorization Letter included with this production, serves as proof that Higbee & Associates has been authorized by the copyright owner to act as Plaintiff's attorney in this action.

Date: October 13, 2020                    HIGBEE & ASSOCIATES

By: **/s/ _Mathew K. Higbee_**
Mathew K. Higbee, Esq.
*Attorney for Plaintiff*

## <u>VERIFICATION</u>

I, Avery Gibson, on behalf of Trunk Archive certify and declare under penalty of perjury under the laws of the United States of America that I have read these Responses to Defendant's First Set of Requests for Production of Documents and know their contents and believe, to the best of my knowledge, that such answers are true and correct.

Executed this <u>13</u> day of October 2020.

*Avery Gibson*
_____

Avery Gibson for Trunk Archive

## PROOF OF SERVICE

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On October 13, 2020, I caused to be served the foregoing documents:

**PLAINTIFF'S S SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

X        (BY MAIL / E-MAIL) I deposited such envelope in the mail at Santa Ana, California. The envelope was mailed with postage thereon fully prepaid and addresses to the person below:

> Frank C. Gibson, Esq.
> fgibson@eugenelaw.com
> Jonathan M. Hood
> jhood@eugenelaw.com
> 940 Williamette Street, Suite 400
> P.O. Box 10866
> Eugene, Oregon 97440
> **Attorney for Defendant**

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on October 13, 2020, at Santa Ana, California.

*/s/ Saba A. Basria*
Saba A. Basria, Esq.
*Attorney for Plaintiff*

**Frank C. Gibson, OSB #792352**
fgibson@eugenelaw.com
**Jonathan M. Hood, OSB #133872**
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:    (541) 686-9160
Facsimile:    (541) 343-8693
Of Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **GREAT BOWERY INC.** d/b/a **TRUNK ARCHIVE,** | Case No.  6:20-cv-00009-MK |
| Plaintiff, | **DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF** |
| vs. | |
| **CASCADE DIGITAL MEDIA LLC;** and **DOES 1 through 10 inclusive,** | |
| Defendant. | |

To:  Plaintiff Great Bowery Inc., dba Trunk Archive, and its attorneys of record:

These interrogatories are issued on behalf of Defendant Cascade Digital Media LLC in

accordance with Fed. R. Civ. P. 26 and Fed. R. Civ. P. 33, and the Local Rules of the District

Court.  Please answer the following interrogatories separately and fully, under oath, within thirty

(30) days of receipt hereof.  Answers should be submitted to Hutchinson Cox,

940 Willamette Street, Suite 400, Eugene, Oregon 97401.

Each interrogatory seeks information available to Plaintiff, its attorneys or agents, and all

persons acting on their behalf.  Accordingly, the terms "Plaintiff," "you," and "your" refer without

limitation to Plaintiff, its attorneys, employees, and agents, and all persons acting on its behalf.

Page 1 –   DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Exhibit 4
Page 1 of 4

When the term "identify" is used in conjunction with the term "person," or if the answer to any interrogatory refers to a person, you are to state each person's: full legal name, present or last known address and telephone number (business and residential), occupation, job title, business affiliation and/or nature of business, and gender and race.  When the term "identify" is used in conjunction with the term "entity," you are to state each entity's: full entity name, state of incorporation, address of the entity's principal place of business, and telephone number.

## INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify the date that Plaintiff acquired exclusive licensing rights in the copyright registration referenced in paragraph 17 of the Complaint.

**RESPONSE:**

**INTERROGATORY NO. 2:**  Identify the date that Plaintiff acquired exclusive licensing rights in the images that are the subject of this litigation.

**RESPONSE:**

**INTERROGATORY NO. 3:**  Identify the person or entity from whom Plaintiff acquired the exclusive licensing rights referenced in Interrogatories 1 and 2.

**RESPONSE:**

**INTERROGATORY NO. 4:**  Identify all persons and entities who have been granted any rights or licenses, at any time, in the photographs taken by Annie Leibovitz that were displayed in the June 25, 2015, edition of *Vanity Fair*.

**RESPONSE:**

**INTERROGATORY NO. 5:**  Identify with specificity the damages Trunk Archive has suffered to date as a result of the alleged infringement in this matter.

**RESPONSE:**

**INTERROGATORY NO. 6:**  Identify with specificity the costs and fees Trunk Archive has incurred to date as a result of the alleged infringement in this matter.

**RESPONSE:**

**INTERROGATORY NO. 7:**  Identify the specific rights Trunk Archive has acquired in the copyright registration referenced in paragraph 17 of the Complaint.

**RESPONSE:**

**INTERROGATORY NO. 8:**  Describe the facts on which you assert that Defendant's alleged infringement was willful.

**RESPONSE:**

**INTERROGATORY NO. 9:**  When did Plaintiff or any agent of Plaintiff discover the allegedly infringing use?

**RESPONSE:**

**INTERROGATORY NO. 10:**  Identify the person, and provide for the person his or her mailing address, email address, and telephone number, who discovered the allegedly infringing use on the date given in response to Interrogatory No. 9 above.

**RESPONSE:**

DATED this 19th day of August, 2020.

HUTCHINSON COX

By:    s/Jonathan M. Hood
   Frank C. Gibson, OSB #792352
   Jonathan M. Hood, OSB #133872
   Of Attorneys for Defendant

Page 3 –   DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Exhibit 4
Page 3 of 4

## CERTIFICATE OF SERVICE

I certify that on August 19, 2020, I served or caused to be served a true and complete

copy of the foregoing **DEFENDANT'S FIRST SET OF INTERROGATORIES TO**

**PLAINTIFF** on the party or parties listed below as follows:

☐     Via CM / ECF Filing

☒     Via First Class Mail, Postage Prepaid

☒     Via Email

☐     Via Personal Delivery

☐     Via Facsimile

Mathew K. Higbee
Higbee & Associates
1504 Brookhollow Drive, Suite 112
Santa Ana, CA 92705
mhigbee@higbeeassociates.com
Facsimile: (714) 597-6559

HUTCHINSON COX

By:  s/Jonathan M. Hood
    Frank C. Gibson, OSB #792352
    Jonathan M. Hood, OSB #133872
    Of Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| GREAT BOWERY INC. d/b/a TRUNK ARCHIVE,<br><br>Plaintiff(s),<br><br>v.<br><br>CASCADE DIGITAL MEDIA LLC; and DOES 1 through inclusive,<br>Defendant. | **CIVIL ACTION NO.**<br><br>6:20-cv-00009-MK<br><br><br>**PLAINTIFF'S RESPONSES TO DEFENANT'S FIRST SET OF INTERROGATORIES** |

### PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Great Bowery Inc. d/b/a Trunk Archive ("Trunk Archive") hereby submits these supplemental responses to Defendant Cascade Digital Media, LLC for the First Set of Interrogatories pursuant to the Local Rules and Fed. R. Civ. P. 26(b).

### GENERAL RESPONSES

Responding Party submits these responses subject to, without waiver of, and expressly preserving, the right at any time to amend, revise, correct, supplement, or clarify any of the objections and responses herein at any time, up to and including trial.  Responding Party also submits these responses subject to, without waiver of, and expressly preserving: (a) any objections as to the competency, relevance, materiality, privilege, or admissibility of any of the responses or any of the documents identified in any response hereto; (b) the right to object to other discovery procedures involving or relating to the subject matter of the responses herein; (c) the right to object on any ground, at any time, to such other or supplemental Interrogatories Propounding Party may at any time propound, involving or relating to the subject matter of the

First Set of Interrogatories. Responding Party hereby expressly preserves all rights, remedies and recourse against Propounding Party with respect to discovery and otherwise. Inadvertent production, revelation or identification of privileged information by Responding Party is not a waiver of any applicable privilege.

Additionally, Responding Party has not completed investigation of the facts and documents relating to this action and has not completed trial preparation. Consequently, Responding Party responds to each Request for Production to the best of Responding Party's present, existing knowledge. Responding Party reserves the right to amend, revise, correct, supplement, or clarify any of the objections and responses herein pursuant to any facts or information gathered at any time subsequent to the date of this response.  Moreover, the responses contained herein are not intended to and shall not preclude Responding Party from making any contentions or relying upon any facts or documents at trial, whether or not identified or relied upon herein, which result from subsequently discovered information and/or evidence.

<u>**GENERAL OBJECTIONS**</u>

Responding Party makes the following general objections with respect to the information and/or the documents that may be produced:

1.      Responding Party objects to each request to the extent that it requests information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege and Responding Party will not produce such information. To the extent any information is inadvertently produced, such production is not intended as any waiver of the attorney-client privilege or any applicable privilege.

2.      Responding Party objects to the requests on the ground that the information and/or documents sought are not relevant to the subject matter of this action and do not fall within the scope of discoverable evidence as set forth in the Federal Rules of Civil Procedure.

3.      Responding Party objects to the requests on the ground that the requests are overbroad, vague and ambiguous.

4.      Responding Party objects to the requests on the ground that the requests seek information and/or documents that are equally available to the requesting party, its agents, privies and assigns.

5.      Responding Party reserves the right to object to the introduction into evidence, at the trial or arbitration or any other proceeding, of any information and/or documents produced pursuant to the requests on any ground, including, without limitation, applicable privilege, competence, relevance, materiality, propriety information and admissibility.

6.      Responding Party objects to the requests on the ground that the information and/or documents requested have been previously produced and/or made available in this litigation or prior to this litigation.

7.      Responding Party objects to the requests on the ground that the individual requests are compound, conjunctive or disjunctive.

8.      Responding Party objects to the requests on the ground that the individual requests are not complete in and of themselves and are, therefore, impermissible.

9.      Responding Party objects to the requests on the ground that the individual requests call for a legal conclusion or an expert opinion.

10.     Nothing herein shall be construed as an admission respecting the admissibility, truth, authenticity, accuracy or relevance of any documents.


## RESPONSES TO INTERROGATORIES

**ROG 1**: Identify the date that Plaintiff acquired exclusive licensing rights in the copyright registration referenced in paragraph 17 of the Complaint.

**RESPONSE**: Trunk Archive began representing Annie Leibovitz exclusively for syndication as of November 12, 2014.  Therefore, Trunk Archive had exclusive licensing rights once the images were published in 2015.

PLAINTIFF'S RESPONSES TO DEFENDANT'S ROGS

3

Exhibit 5
Page 3 of 7

**ROG 2**: Identify the date that Plaintiff acquired exclusive licensing rights in the images that are the subject of this litigation.

**RESPONSE**: Trunk Archive began representing Annie Leibovitz exclusively for syndication as of November 12, 2014.  Therefore, Trunk Archive had exclusive licensing rights once the images were published in 2015.

**ROG 3**: Identify the person or entity from whom Plaintiff acquired the exclusive licensing rights referenced in Interrogatories 1 and 2.

**RESPONSE**: Annie Leibovitz

**ROG 4**: Identify all persons and entities who have been granted any rights or licenses, at any time, in the photographs taken by Annie Leibovitz that were displayed in the June 25, 2015 edition of *Vanity Fair*.

**RESPONSE**: No further licenses have been granted.  *Condé* Nast is the only authorized licensee.

**ROG 5**: Identify with specificity the damages Trunk Archive has suffered to date as a result of the alleged infringement in this matter.

**RESPONSE**: Plaintiff's damages include lost licensing fees, as well as the expenses saved by the Defendant and profits earned as a result of the infringement.  As proof of its lost licensing fees, Plaintiff has already sent comparable licenses for Ms. Leibovitz to Defendant and may elect statutory damages in this matter.

**ROG 6**: Identify with specificity the costs and fees Trunk Archive has incurred to date as a result of the alleged infringement,

**RESPONSE**: Trunk Archive has incurred the costs and fees of trying to resolve this matter in pre-litigation, and then later pursuing this matter in litigation since negotiations proved unsuccessful.  Thus far, Plaintiff estimates that it has incurred about $4,000 in costs and fees.

PLAINTIFF'S RESPONSES TO DEFENDANT'S ROGS

Exhibit 5
Page 4 of 7

Counsel typically sends an invoice after the case has concluded; therefore, Plaintiff cannot calculate this number with exact certainty.

**ROG 7**: Identify the specific rights Trunk Archive has acquired in the copyright registration referenced in paragraph 17 of the Complaint.

**RESPONSE**: Trunk Archive has acquired the right to license Ms. Leibovitz's copyrighted works and enforce her copyrights in all matters related to infringement of her work.

**ROG 8**: Describe the facts on which you assert Defendant's alleged infringement was willful.

**RESPONSE**: Defendant knowingly used the images without a license or permission from the copyright holder or its exclusive licensor.

**ROG 9**: When did Plaintiff or any agent of Plaintiff discover the allegedly infringing use?

**RESPONSE**: As mentioned in the Complaint and referenced in the accompanying Exhibits, the images were discovered on April 26, 2019 by PixRay, a third-party visual content discovery company.

**ROG 10**: Identify the person, and provide for the person his or her mailing address, e-mail address, and telephone number, who discovered the allegedly infringing use on the date given in response to Interrogatory No. 9 above.

**RESPONSE**: The images were discovered through PixRay, a visual content discovery and copyright tracking service.  The results were likely delivered through PixRay technology and not through an individual.


Date: October 13, 2020                              HIGBEE & ASSOCIATES

                                                                By: **/s/ *Mathew K. Higbee***
                                                                Mathew K. Higbee, Esq.
                                                                *Attorney for Plaintiff*

**VERIFICATION**

PLAINTIFF'S RESPONSES TO DEFENDANT'S ROGs

Exhibit 5
Page 5 of 7

I, Avery Gibson, on behalf of Trunk Archive certify and declare under penalty of perjury under the laws of the United States of America that I have read these Responses to Defendant's First Set of Interrogatories and know their contents and believe, to the best of my knowledge, that such answers are true and correct.

Executed this ___13___ day of October 2020.

*Avery Gibson*
_____

Avery Gibson for Trunk Archive

## PROOF OF SERVICE

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On October 13, 2020, I caused to be served the foregoing documents:

**PLAINTIFF'S S SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

X      (BY MAIL / E-MAIL) I deposited such envelope in the mail at Santa Ana, California. The envelope was mailed with postage thereon fully prepaid and addresses to the person below:

Frank C. Gibson, Esq.
fgibson@eugenelaw.com
Jonathan M. Hood
jhood@eugenelaw.com
940 Williamette Street, Suite 400
P.O. Box 10866
Eugene, Oregon 97440
**Attorney for Defendant**

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on October 13, 2020, at Santa Ana, California.


*/s/ Saba A. Basria*
Saba A. Basria, Esq.
*Attorney for Plaintiff*

Frank C. Gibson, OSB #792352
fgibson@eugenelaw.com
Jonathan M. Hood, OSB #133872
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:     (541) 686-9160
Facsimile:     (541) 343-8693
Of Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **GREAT BOWERY INC.** d/b/a **TRUNK ARCHIVE,** | Case No.  6:20-cv-00009-MK |
| Plaintiff, | **DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |
| vs. | |
| **CASCADE DIGITAL MEDIA LLC;** and **DOES 1 through 10 inclusive,** | |
| Defendant. | |

To:  Plaintiff Great Bowery Inc., dba Trunk Archive, and its attorneys of record:

Pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, Defendant Cascade

Digital Media LLC requests that Plaintiff produce the documents described below, in accordance

with the definitions and instructions contained herein, for inspection and copying, on or before

30 days from the date of service, at the offices of Hutchinson Cox, 940 Willamette Street, Suite 400,

Eugene, Oregon 97401.

## I.     INSTRUCTIONS AND DEFINITIONS

Each request below extends to any documents in the possession, custody or control of

Plaintiff.  The document is deemed to be in the possession, custody or control of Plaintiff if it is

in the physical custody of Plaintiff, or it is in the physical custody of any other person and

Page 1 – DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS
        TO PLAINTIFF

Exhibit 6
Page 1 of 4

Plaintiff (a) owns such documents in whole or in part; (b) has a right to use, inspect, examine or copy such document on any terms; (c) has any understanding, express or implied, that Plaintiff may use, inspect, examine or copy such document on any terms; or (d) has, as a practical matter, been able to use, inspect, examine or copy such document.

A.      "Plaintiff" includes Plaintiff Great Bowery Inc., dba Trunk Archive named herein as such, but also any predecessors, attorneys, partners, employees, representatives, agents, and/or any person or entity acting on its behalf.

B.      "Defendant" includes Cascade Digital Media LLC, and any employees, agents, or others acting on its behalf.

C.      "Document" refers to any materials containing information, data, or data compilation no matter how recorded or stored, including, but not limited to, emails, text messages, voicemails, audio or video recordings, photographs, drawings, writings, and social media posts, whether stored on paper, as electronically stored information (ESI), or in another physical form.

D.      "Communication" refers to the sharing and/or transfer of information, data, or data compilation between two or more people, such as memoranda, letters, emails, text messages, documents referencing verbal conversations, and communications sent via internet-based messaging systems (e.g., Facebook Messenger or WhatsApp).

E.      "Images" refers to the images that are the subject of this action, as alleged in Paragraphs 15 through 18 and Exhibit B to the Complaint.

F.      As to any document that Plaintiff fails to produce, state the location where such document can be found, the name of the possessor, when such documents left Plaintiff's possession or control and the reasons why Plaintiff cannot produce such document.

G.      If any document is withheld under claim of privilege, Plaintiff is required to identify its author, addressee, recipient and content to allow the matter to be brought before the court as well as the nature of the privilege asserted and the factual basis for the claim.

Page 2 – DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS
         TO PLAINTIFF

Exhibit 6
Page 2 of 4

## II.    REQUESTS

**REQUEST FOR PRODUCTION NO. 17:**  The invoice for the lowest license fee charged for an Annie Leibovitz image (see Defendant's Interrogatory No. 13).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**  All documents, including agreements, not otherwise produced granting Plaintiff rights in the Images, either expressly or by implication.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**  All documents not otherwise produced supporting Plaintiff's copyright infringement claim against Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**  All documents not otherwise produced supporting Plaintiff's claim for damages against Defendant.

**RESPONSE:**

DATED this 4th day of December, 2020.

HUTCHINSON COX


By:    s/Jonathan M. Hood
      Frank C. Gibson, OSB #792352
      Jonathan M. Hood, OSB #133872
      Of Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on December 4, 2020, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** on the party or parties listed below as follows:

☐      Via CM / ECF Filing
☐      Via First Class Mail, Postage Prepaid
☒      Via Email
☐      Via Personal Delivery
☐      Via Facsimile

Mathew K. Higbee
Higbee & Associates
1504 Brookhollow Drive, Suite 112
Santa Ana, CA 92705
mhigbee@higbeeassociates.com
Facsimile: (714) 597-6559
Of Attorneys for Plaintiff

HUTCHINSON COX

By:   s/Jonathan M. Hood
     Frank C. Gibson, OSB #792352
     Jonathan M. Hood, OSB #133872
     Of Attorneys for Defendant

**Frank C. Gibson, OSB #792352**
fgibson@eugenelaw.com
**Jonathan M. Hood, OSB #133872**
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:     (541) 686-9160
Facsimile:     (541) 343-8693
Of Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **GREAT BOWERY INC.** d/b/a **TRUNK ARCHIVE,** | Case No.  6:20-cv-00009-MK |
| Plaintiff, | **DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFF** |
| vs. | |
| **CASCADE DIGITAL MEDIA LLC;** and **DOES 1 through 10 inclusive,** | |
| Defendant. | |

To:  Plaintiff Great Bowery Inc., dba Trunk Archive, and its attorneys of record:

These interrogatories are issued on behalf of Defendant Cascade Digital Media LLC in

accordance with Fed. R. Civ. P. 26 and Fed. R. Civ. P. 33, and the Local Rules of the District

Court.  Please answer the following interrogatories separately and fully, under oath, within thirty

(30) days of receipt hereof.  Answers should be submitted to Hutchinson Cox,

940 Willamette Street, Suite 400, Eugene, Oregon 97401.

Each interrogatory seeks information available to Plaintiff, its attorneys or agents, and all

persons acting on their behalf.  Accordingly, the terms "Plaintiff," "you," and "your" refer without

limitation to Plaintiff, its attorneys, employees, and agents, and all persons acting on its behalf.

Page 1 –   DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFF

Exhibit 7
Page 1 of 3

When the term "identify" is used in conjunction with the term "person," or if the answer to any interrogatory refers to a person, you are to state each person's: full legal name, present or last known address and telephone number (business and residential), occupation, job title, business affiliation and/or nature of business, and gender and race.  When the term "identify" is used in conjunction with the term "entity," you are to state each entity's: full entity name, state of incorporation, address of the entity's principal place of business, and telephone number.

### INTERROGATORIES

**INTERROGATORY NO. 11:**  Identify the person who signed the document titled "Artist Agreement," dating it November 14, 2014, produced by Plaintiff to Defendant on October 13, 2020.

**RESPONSE:**

**INTERROGATORY NO. 12:**  Describe the process Trunk Archive uses to determine licensing fees for Annie Leibovitz's images.

**RESPONSE:**

**INTERROGATORY NO. 13:**  Identify the lowest license fee charged for an Annie Leibovitz image.

**RESPONSE:**

DATED this 4th day of December, 2020.

HUTCHINSON COX

By:   s/Jonathan M. Hood
      Frank C. Gibson, OSB #792352
      Jonathan M. Hood, OSB #133872
      Of Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on December 4, 2020, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFF** on the party or parties listed below as follows:

☐     Via CM / ECF Filing

☐     Via First Class Mail, Postage Prepaid

☒     Via Email

☐     Via Personal Delivery

☐     Via Facsimile

Mathew K. Higbee
Higbee & Associates
1504 Brookhollow Drive, Suite 112
Santa Ana, CA 92705
mhigbee@higbeeassociates.com
Facsimile: (714) 597-6559
Of Attorneys for Plaintiff

HUTCHINSON COX

By:  s/Jonathan M. Hood
     Frank C. Gibson, OSB #792352
     Jonathan M. Hood, OSB #133872
     Of Attorneys for Defendant

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

## VA 1-977-805

**Effective Date of Registration:**
August 07, 2015

## Title _____

| | |
|---|---|
| **Title of Work:** | Vanity Fair, July 2015 |
| **Previous or Alternate Title:** | Group registration of photographs: 8 photographs; published in the July 2015 issue of Vanity Fair magazine |
| **Content Title:** | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |
| | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |
| | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |
| | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |
| | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |
| | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |
| | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |
| | Caitlyn Jenner, Malibu, California, 2015 (published June 1, 2015) |

## Completion/Publication _____

| | |
|---|---|
| **Year of Completion:** | 2015 |
| **Date of 1st Publication:** | June 01, 2015 |
| **Nation of 1st Publication:** | United States |
| **International Standard Number:** | ISSN 0733-8899 |

## Author _____

| | |
|---|---|
| • **Author:** | Annie Leibovitz |
| **Author Created:** | photograph |
| **Work made for hire:** | No |
| **Citizen of:** | United States |
| **Year Born:** | 1949 |

## Copyright Claimant _____

| | |
|---|---|
| **Copyright Claimant:** | Annie Leibovitz |
| | 405 W 14th Street, 3rd floor, New York, NY, 10014, United States |

Exhibit 8
Page 1 of 2

## Certification

|          |                 |
|----------|-----------------|
| **Name:** | Laura Cali      |
| **Date:** | August 06, 2015 |

**Copyright Office notes:**    Basis for Registration: Group Registration of Published Photographs.

# CONDÉ NAST

CHRISTOPHER DONNELLAN
Executive Director
Contracts and Rights

As of January 1, 2015

**Annie Leibovitz**
**c/o Andrew Wylie**
**The Wylie Agency**
**250 West 57th Street, Suite**
**2114 New York, NY 10107**

Dear Annie:

Condé Nast ("Company") and AL Studio, LLC ("Contributor") f/s/o Annie Leibovitz ("Artist") agree as follows:

1. **Scope of Agreement:** From January 1, 2015 through March 31, 2018 (the "Term"), this agreement will govern each photographic shoot performed by Contributor for Company (a "Project"), specifically for *Vogue* magazine and *Vanity Fair* magazine, and/or for any other publication owned, published, or licensed by or affiliated with Company, whether existing or future, and whether the format of delivery is print, website, app (mobile, tablet, desktop, or otherwise), television, or other media not herein described (each hereinafter a "Publication") and all photographs or other material mutually agreed to by Company and Contributor taken at or created for each Project by Contributor (the "Works"). Individual Projects will be arranged on a case-by-case basis separately between each separate Publication and Contributor, in separate documents to be considered schedules hereto, including all specifics of each Project such as due date, subject matter, format, location, and expenses (the "Schedules"). A form of Schedule is attached as Exhibit A hereto, but the parties may use any written means that provides the necessary information. All Schedules will constitute an integral part of this agreement and will be governed by the terms of this agreement. It is acknowledged that the term of the prior Service Agreement between the parties dated as of January 1, 2012 (the "Prior Agreement") was extended through February 28, 2015 pursuant to that amendment dated as of December 31, 2014 (the "Extension Amendment"). Notwithstanding the Extension Amendment, the parties hereby agree that, with respect to the Extension Term (as defined in the Extension Amendment, i.e., January and February 2015) this agreement shall be deemed to supersede the Extension Amendment and the Prior Agreement, such that all services performed and all Works created during the Extension Term shall be governed solely by the terms of this agreement.

2. **Services:**

    a. Throughout the Term, Contributor will provide one hundred ninety-one (191) days of photography (to be fulfilled as approximately twenty-eight (28) days per year for

1 World Trade Center, New York, NY 10007 | t 212.286.4403 | e 917.374.6258 | chris_donnellan@condenast.com

Vogue | Vanity Fair | Glamour | Brides | Self | GQ | The New Yorker | Condé Nast Traveler | Details | Allure | Architectural Digest
Bon Appétit | Epicurious | Wired | W | Style.com | Golf Digest | Golf World | Teen Vogue | Ars Technica | CNE

Exhibit 9
Page 1 of 18

*Vogue* and twenty-five (25) days per year for *Vanity Fair*) (the "Minimum Commitment").

b.  If, as of March 31, 2018, the number of shoot days completed by Contributor hereunder for any reason falls short of one hundred eighty-four (184) days (a "Shortfall"), the Term shall automatically be extended through April 30, 2018; and if a Shortfall for any reason still remains as of said date, the Term shall automatically be further extended through May 31, 2018. Each such calendar month of extension is referred to herein as a "Supplementary Month". The foregoing notwithstanding, nothing herein shall negate Contributor's responsibilities pursuant to section 2(e) or 2(f) hereof.

c.  Company shall use reasonable best efforts to offer Contributor a number of Projects during the Term that is sufficient to enable Contributor to fulfill the Minimum Commitment without the necessity of any Supplemental Months.

d.  The nature and length of the Projects shall be determined by the Editor in Chief of the applicable Publication or his/her designee. Contributor agrees to travel for Projects as requested by Company, subject to mutual agreement on the specifics; in all cases travel days, preparation, production work, and the like shall not be considered days of photography.

e.  It is understood that the fulfillment of Contributor's services hereunder will require flexibility and cooperation on the part of both Contributor and the Publications to meet the requirements, schedules, and plans of each of the Publications, which requirements, schedules, and plans may sometimes compete with each other.  It is understood that for purposes of this agreement Contributor is a New York based photographer, with a New York office and staff, and if Contributor decides to relocate, Company may continue to treat Contributor as New York-based unless Company and Contributor shall mutually agree as to another location Contributor shall be considered "based" with respect to expenses, etc. While it is agreed that Contributor may provide photographic services to other clients (as discussed more fully below), it is also agreed that Contributor will give preference to the Publications in scheduling and that Contributor will endeavor to fulfill Contributor's obligations to Company and meet the Publications' schedules before scheduling services to other clients. **It is further understood that Contributor's services are to be fulfilled during the Term hereof. If at the expiration of the Term there exists any unfulfilled services not caused by Contributor's unavailability, illness or refusal to shoot, Company shall forfeit any remaining days unless otherwise agreed with Contributor in writing. The foregoing notwithstanding, at the expiration of the Term Company shall be reimbursed (either in fees or services) for any unfulfilled days resulting from Contributor's unavailability, illness or refusal to shoot (but not for any unfulfilled days resulting from Company's failure to provide a sufficient number of Projects).**

f.  The Works must be satisfactory in form, quantity and substance to Company, and must be submitted by the agreed due date. Once a shoot date has been confirmed with a

Exhibit 9
Page 2 of 18

be submitted by the agreed due date. Once a shoot date has been confirmed with a Publication, Publication will contact the Contributor with proposed dates for delivery of edit and final Works. Once the delivery dates are mutually agreed upon, they cannot be changed by Contributor unless first agreed by Publication. Contributor must provide a selection of Works determined in consultation with Company, from each Project, from which Company may choose what it wishes to Publish, and upon request of Company, Contributor will provide additional Works. In all cases, Contributor shall allow the Art Director (or their equivalent) of the commissioning Publication to see all of the photographs (in digital form or otherwise) taken at any Project completed hereunder promptly after the shoot at Contributor's studio. Contributor will retain an original or other high-quality copy of all material submitted to Company. All proof prints and similar physical materials submitted to Company in connection with each Project (other than archival materials furnished by Artist) (the "Proof Prints") shall be owned by Company, and Company shall not have any liability for loss of or damage to any Proof Prints submitted to Company, regardless of cause, including as a result of negligence or more culpable conduct, and regardless of any warning or statement by Contributor, and Company has no obligation to return the Proof Prints submitted to Company; provided, however, that Company shall not make use of any Proof Prints for any purpose other than as otherwise authorized hereunder, and shall not sell or transfer any of the Proof Prints to any third party (other than in connection with an acquisition of substantially all of Company's assets.

g.  No less often than every three (3) months during the Term, the parties shall schedule and hold a meeting to review the on-going performance of Contributor's services hereunder (a "Quarterly Meeting"). Prior to each Quarterly Meeting, Company shall provide Contributor with a written report stating: (i) the number of shoot days hereunder then completed or confirmed, indicating whether this number exceeds or falls short of the monthly average required to fulfill the entire Minimum Commitment; (ii) a summary of Contributor's performance during the prior portion of the Term in presenting and delivering Works to each Publication on a timely and efficient basis; (iii) a description of any other issues that Company believes need to be addressed to improve or facilitate the efficient and effective performance of Contributor's services hereunder; and (iv) a summary of the progress made toward any goals established at the prior Quarterly Meeting (if applicable). At the Quarterly Meeting the parties shall discuss each item in the report, review the progress made since the prior Quarterly Meeting, and use reasonable good-faith efforts to formulate suitable measures to rectify any shortfall in the monthly shoot-day average, to improve the process of presenting and delivering Works to each Publication, and to address any issues raised in the report.

3.   **Fee:** Company will pay Contributor a total fee of ███████████████████████ ███████████████████████, with respect to the Minimum Commitment during the Term (including any Supplementary Month(s)), payable, on or before the 15th day of the applicable month, in thirty-six (36) monthly installments as follows: (█████████████████████ ████████████covering both of the first two (2) months (i.e., January and February 2015); (i█████████████████████████████████████████████████████████████████████i.e., ████████████████████████████████████████████████████████████████████████

3

Exhibit 9
Page 3 of 18

per month for the fourth month (April 2015) through the thirty-fifth month (November 2017); and (iv) a single payment of ~~Two Hundred Twenty Four Thousand~~ ~~due~~ on or before December 15, 2017, covering the thirty-sixth month (December 2017) through the thirty-ninth month (March 2018) ~~~~ provided, however, that no installment shall be due or paid with respect to any Supplementary Month. The foregoing notwithstanding, it is acknowledged that pursuant to the Extension Amendment, Company has already paid to Contributor the sum of ~~Two Hundred Thousand~~ ~~~~, and this amount shall therefore be applied as a credit to the fee payable under section 3(i) hereof (i.e., the January 2015 and February 2015 monthly installments shall be deemed already paid). In the event Contributor completes any Projects agreed upon with Company consisting of days of photography in excess of the Minimum Commitment, such Projects shall be paid at a fee to be negotiated on a case-by-case basis. All fees paid by Company will encompass all compensation due to Contributor for the rights granted herein and all services and obligations and exclusivity herein except as otherwise expressly provided herein. In accordance with Contributor's request, Company will send any payments hereunder, made payable to Contributor or Contributor's designated payee ("Payee"), as indicated below. Contributor agrees that any payments to Payee of monies due to Contributor under this agreement will discharge Company's payment obligations hereunder. These payment instructions may be changed at any time by a written document signed by Contributor.

The Payee shall be AL Studio, LLC, with all payments to be made by wire transfer to the following bank account:

Citibank, NA
75 Christopher Street
New York, NY 10014

AL Studio LLC
Account Number: 4977160348
ABA Number: 021000089

4. **Expenses:** For all Projects, Company will reimburse Contributor's expenses provided that they do not exceed the written, approved budget for the Project, to be determined by the applicable Publication's Editor in Chief or his/her designee in consultation with Contributor, before photography commences. Contributor will complete and submit a proposed budget to the Publication before shooting commences, and the Publication will advance to Contributor at least 50% of the approved budgeted expenses no later than five (5) business days prior to the shoot (provided the shoot budget has been approved in sufficient time to do so or, if not, immediately following such approval); the Publication will pay the remaining part of the approved budgeted expenses within thirty (30) days of its receipt of all of the receipts and documentation. Budgets must be adhered to, and any overages incurred or authorized by Contributor not approved in advance by an authorized representative of Company will be Contributor's sole responsibility. If Company is or may be held liable by a third party for any such overages, it may pay the amount owed to third parties and deduct such payments from payments due to Contributor, or, alternatively, require Contributor to reimburse it for such payments. Company shall provide

4

Exhibit 9
Page 4 of 18

Contributor notice and related correspondence relating to any such third party claims for overages and an opportunity to resolve the claim prior to deduction of any payments.

*Vanity Fair* magazine will continue to provide Contributor with the assistance of a producer or producers for *Vanity Fair* photo shoots, as it has in the past. For portfolio Projects, *Vogue* will also provide the assistance of a producer or producers. Contributor and Company shall mutually agree on the individual(s) to so act as producer(s) for Contributor.

When travelling to fulfill the services required hereunder Artist may fly via Business Class airfare, stay in a junior suite at the hotel of her choice chosen from the list of Company-authorized hotels, and engage the car service of her choice chosen from the list of Company-approved car services.

5. **Exclusivity and Restrictions:**

   a. Contributor will not during the Term execute any photographic assignments of any kind, whether editorial or non-editorial in nature, for any U. S., foreign, online, mobile, or other magazine, newspaper, or periodical publication (including those owned by Company) whether the format of delivery is print, website, app (mobile, tablet, desktop, or otherwise), television, or other media by which Publications are distributed or made available not herein described (it being agreed that "online" and "mobile" magazine, newspaper or periodical publication is not limited to sites that derive from or are associated with a print publication), whatsoever, with the following exceptions:

      (i) Contributor may do photographic shoots or project for any 1) foreign Company-owned, -affiliated, or -licensed publication, or 2) foreign-language publication licensed by Company in the United States, or 3) *The New Yorker*, on the following conditions:

         1. Contributor will notify the Editors in Chief of *Vanity Fair* and *Vogue* or their respective designee(s) of any such proposed shoot or project , specifying the subject of the shoot, and offer the Publications the first option for such shoot or project , which the Publications will have three (3) days to accept or reject; and

         2. The Publications will have first call on Contributor's time and Contributor's services for the other publications may not interfere with the Publications' plans and schedules. The essence of this agreement is that Contributor will be available to the Publications when needed, and thus any such project shall be subject to paragraph 2 hereof.

      (ii) Contributor may do photographic shoots for *Condé Nast Traveler* on the following conditions:

         1. Company, in its sole estimation, deems Contributor on-track to fulfill Contributor's Services required hereunder; and

5

Exhibit 9
Page 5 of 18

3. The scheduling of *Vanity Fair* and *Vogue* shoots will take precedence over any Condé Nast Traveler shoots.

2. *Condé Nast Traveler* shall pay a fee of not less tha▇▇▇▇▇▇▇▇r the completion of each such photographic shoot.

b. If Contributor wishes to photograph models, fashion designers, movie actors (in or out of role), or fashion shoots for *The New Yorker*, Contributor must obtain approval for such shoot from the Editors in Chief of *Vogue* and *Vanity Fair*, such approval not to be unreasonably withheld.

c. Contributor will not during the Term authorize Artist's photographs to be Published in the U.S., foreign, online, and/or mobile editions of any of the following publications ("Restricted Publications"): *Cosmopolitan, Details, Departures, Elle, Elle Décor, Entertainment Weekly, Esquire, Fitness, Fortune, Harper's Bazaar, Hello, InStyle* (U.S. edition only), *Interview, Life, Los Angeles, Marie Claire, Maxim, Men's Journal, New York, New York Post* (and any affiliated magazine), *Newsweek, O The Oprah Magazine, Outside, Paris Match, People, Playboy, Rolling Stone, Shape, Slate, Sports Illustrated, Tatler,* any *New York Times* magazine supplements, *Time, Town & Country, Travel & Leisure, US, W,* and *WSJ*. Company may, in its sole discretion, at any time, change up to four (4) publications in the foregoing list during each year of the term of this agreement, provided that Company will give Contributor at least ninety (90) days notice of each such change and the total number of Restricted Publications does not increase. Any such change shall take effect subject to any existing written contractual commitments that Contributor may have as of the date of Contributor's receipt of such notice. This restriction prohibits Contributor during the Term from:

(i) granting or licensing any rights to any Restricted Publication in any of Artist's photographs, regardless of when the photograph was taken (whether before or during the period Contributor is providing services hereunder) the purpose for or circumstances under which the photograph was taken, the subject of the photograph, or the client, if any, for whom the photograph was taken,

(ii) supplying any such photographs to any Restricted Publication, and/or

(iii) otherwise participating or aiding in the publication or supplying of any such photographs by or to any Restricted Publication. It is agreed that the publication of photographs pursuant to paragraph 5(c) will not be a violation of this subparagraph.

Notwithstanding anything to the contrary contained in paragraphs 5(a)-(c) or elsewhere in this agreement, the parties hereto expressly acknowledge and agree that, except as provided in paragraph 5(e), Contributor may do commercial photography (meaning advertisements and publicity photographs for third parties) during the period Contributor is providing services hereunder (which commercial photography may be

6

Exhibit 9
Page 6 of 18

published in any publication, including any Restricted Publication) and that Contributor may be credited in connection therewith only when such photos are used in a commercial, non-editorial manner. Contributor must explicitly impose these restrictions in written contracts with Contributor's clients. Company is an intended third party beneficiary of such provisions and may, in its sole discretion, commence litigation or take other action to enforce such restrictions or this provision against any such client; Contributor will fully cooperate with Company in any such action. In addition, subject to the restrictions contained in paragraphs 5(a), 5(c), and 5(d), hereof, the parties hereto expressly acknowledge and agree that Contributor may do private photography (e.g., portraiture, fine-art photography not commissioned for publication) during the period Contributor is providing services hereunder, and may be credited in connection therewith. Contributor may request, on an occasional basis, that Company grant its consent for Contributor to authorize publication of an image in a Restricted Publication, and in the event of such a request Company shall consider such request in good faith and provide a response to Contributor without delay, such determination to be in Company's sole discretion.

d. Contributor will not during the Term promote or formally or continually be associated with any publication, or issue of a publication, other than the Publications (other than occasional biographic profiles regarding Artist and her work). This includes the authorization by Contributor of the use of Artist's name and/or likeness, and/or personal appearances by Artist.

e. Company agrees that if a Restricted Publication publishes an article on Contributor occasioned by the publication of an upcoming photography book and/or exhibition of Contributor's work, the publication may publish in connection with such article some of the photographs appearing in Contributor's book and/or the exhibition of Contributor's work, including Restricted Images, provided that Contributor makes such use contingent upon the following conditions in a written contract: Reprints of photographs originally published in a Publication are subject to the conditions of this agreement, including but not limited to the exclusivity provided in the Rights provisions, and must be accompanied by an on-page credit line reading "courtesy of [the particular Publication]," and regardless of where or whether the photographs were originally published, the text must include identification of Artist as a Vanity Fair contributing photographer. Though Contributor's right to grant the Restricted Publication permission to publish such photographs is contingent upon its meeting the foregoing requirements, failure on the part of a Restricted Publication to do so will not be deemed a breach of this agreement by Contributor. Nothing contained in this paragraph 5 (other than the reference to exclusivity) shall be construed to limit Contributor's own use of Works for promotion of Contributor's books, exhibitions, and sales of fine-art photographic prints, such as Contributor posting photographs on her personal website (or the website of her agent or authorized representative) or Contributor sending invitations to or promoting a book, an exhibition or sales of photographic prints. In any case where there is any reasonable doubt in Contributor's mind about whether Contributor's activities do or will comply with or violate the provisions of this agreement, Contributor will first discuss such matter with the Editors

7

Exhibit 9
Page 7 of 18

in Chief of *Vanity Fair* and *Vogue* or their designees.

f.   Contributor will not permit any fashion portfolios Published (as defined herein) by *Vogue*, or any images (published or unpublished) from the same Project as any such fashion portfolio, to be Published in whole or in part by any third party, including after the expiration of any exclusivity hereunder and after the expiration of this agreement, without the written approval of Anna Wintour, such approval not be unreasonably withheld. Notwithstanding the foregoing, subject to the exclusivity provisions herein, Contributor may reproduce individual images from any fashion portfolio in books relating to Artist's work, in connection with exhibitions of her work, and as fine-art prints exhibited and/or offered for sale. Company shall give thoughtful consideration to any request by Contributor to reproduce all of the images from any fashion portfolio in any such book, exhibition or print collection.

g.   As used in this Section 5, the term "photographs" shall be deemed to include all forms of photography, including but not limited to still photography and motion-picture (e.g., film and video) photography.

6.   **Exclusive Rights:**

a.   *Publishing Rights.* As between Contributor and Company, Contributor owns the copyright in the Works, and, subject to the exclusions specified below, hereby grants to the commissioning Publication the exclusive first worldwide right to publish, distribute, display, perform, stream, transmit, make available for download, disseminate, broadcast by air or by cable, adapt, enhance, show, compile, or otherwise use in any manner or media in connection with the content, dissemination or promotion of any Publication (collectively, "Publish" or "Publishing") each Work, which exclusivity lasts either until ninety (90) days after the Work is first Published by the commissioning Publication, or for Works that are first Published on the cover of a print Publication ("Cover Work") (and any Work from the same Project as any Cover Work and featuring the same subject as the Cover Work) until six (6) months after the Cover Work is first Published by the commissioning Publication. If the commissioning Publication does not Publish any Works from a Project within nine (9) months of acceptance of the Works from the Project by such Publication, Contributor may request, in writing, reversion of all rights in the unpublished Works from such Project; if the commissioning Publication does not Publish the Works within three (3) months of receipt of such written request, all rights in the Works will revert to Contributor upon the expiration of such three (3) month period. In the event that the commissioning Publication decides that the Works from a particular Project will not be Published (i.e., are "killed") the foregoing exclusivity to the killed Project shall terminate and the commissioning Publication shall immediately revert all rights in such killed Works to Contributor. Contributor will not Publish or allow anyone else to Publish any of the Works (including Cover Works) for any purpose until the applicable exclusivity period has expired, including after the Term has expired or been terminated. Company's exclusivity extends to each and every Work taken at or created for or as a result of the applicable Project until the applicable exclusivity period has expired. Contributor will not allow any Cover Work (or any Work similar to a Cover Work) to appear on the cover, home page, or landing page of any other publication, in any media, at any time, without Company's

8

Exhibit 9
Page 8 of 18

prior written permission, including after the Term has expired or been terminated. [For the purposes of this agreement, a Work shall be deemed "similar" to another Work if both Works were created at the same Project and depict the same person (or subject matter) in the same or a materially similar set-up.]

b. *BTS Rights.* Company shall have the right to create "behind-the-scenes" and "making of" photography (still and/or video) documenting the preparation, shoot, and completion of each Project by Artist and her team ("BTS Photography"), including depiction of the Artist therein as she executes such Project, and to make use of such BTS Photography in promoting, advertising and publicizing the Publication(s) in which the Work(s) from the applicable Project will appear, including the right to make reasonable use of BTS Photography in social media (e.g., Instagram, Facebook, Twitter, YouTube, etc.). Company shall not exercise its right to create the BTS Photography in any manner that materially interferes with Contributor's ability to perform the applicable assignment. The final BTS Photography, and the edit thereof, to be used publicly shall be subject to Contributor's prior approval, not to be unreasonably withheld, delayed or conditioned, and shall not include any material that Contributor reasonably deems derogatory, embarrassing, and/or private. Company shall provide Contributor with notice of Company's intent to create BTS Photography no later than seven (7) days prior to the applicable shoot, and, whenever time permits, the person or team to be engaged to create the BTS Photography (the "BTS Crew") shall be subject to Contributor's prior written approval, not to be unreasonably withheld, delayed or conditioned. The parties shall develop and agree upon a set of written guidelines that specify the protocols and policies to be followed by each BTS Crew; and each BTS Crew shall be provided in advance with a copy of such guidelines and shall be contractually required to follow them.

7. **Nonexclusive Rights:** Contributor also grants Company, for the full term of copyright, the non-exclusive right to Publish, print, re-Publish, and reprint the Works (including in anthologies as permitted below), the unrestricted right to use any cover containing any Work(s) as a cover (i.e., in the original cover layout) for any purpose at any time, the right to make and authorize the making of reprints or stand-alone copies of the article or feature including any Work(s) for any purpose, the right to authorize the use of any Work(s) in the original layout shown in the applicable Publication as set dressing or props in movies, television shows, and other productions, and in addition, the right to use any Work(s) and/or Contributor's name and/or approved photographic likeness in Publishing, promoting, advertising and publicizing the Publication(s) in which the Work(s) appear.

⑧ **Miscellaneous Rights; Exclusions; Exercise:**

a. *Miscellaneous Rights.* Contributor hereby authorizes Company to determine in its sole discretion whether, when, and how to Publish any Work, and Contributor further grants to Company the right to crop, retouch, edit, and otherwise modify the form and/or contents of the Works in close consultation with Contributor. It is anticipated that Works used in electronic and online versions of the applicable Publication shall be used materially in the same manner as the print version with respect to the selection of Works used, the final version of each, and the layout in which each appears. Any Publishing of Works by Company in electronic and/or online media in a manner which materially differs from the manner which

9



Exhibit 9
Page 9 of 18

such Works are to be Published in print editions shall only be done in close consultation with Contributor. To the extent that such modifications are not material in this regard, any modifications of the Works solely for purposes of compatibility with or optimization for different platforms, sources, or devices shall not be subject to the foregoing consultation requirement. Upon Company's request, Contributor will be available for and will cooperate with Company's fact checking and will supply Contributor's research material relating to the Works. In the event Company returns any original materials to Contributor, Contributor shall promptly loan them to Company upon Company's reasonable request. Contributor waives or agrees not to exercise (to the extent permitted by applicable law) all moral rights or similar rights in respect of the uses to be made of the Works under this agreement to which Contributor may now or at any future time be entitled under any relevant law in force anywhere in the world.

b. *Exclusions:* Notwithstanding the foregoing, the rights granted in this agreement to Company do not include the right to use any Work, or Artist's name or likeness (or other personal indicia), for any the following purposes: (i) the advertising or promotion of any third-party product, service or brand; (ii) merchandising; (iii) third-party syndication and/or licensing other than as expressly permitted herein or as otherwise agreed; (iv) any anthology, book, collection, portfolio, exhibition or similar publication or project in which photographs by Artist comprise forty percent (40%) or more of the photographs (and/or artworks) included therein ; or (v) any usage or exploitation unrelated to any of the Publications and/or Company (i.e., the CONDÉ NAST brand).

c. *Exercise of Rights:* Contributor hereby authorizes Company to exercise (without the obligation to do so) the rights granted herein in any and all media now in existence or hereafter developed, throughout the world, including but not limited to all of the Company's present and future Publications, books, audiovisual productions, Internet or mobile sites, apps, and digital and other archives and databases in context of the Publication in which the Work was Published. In doing so Company may arrange with third parties for producing and distributing its Publication(s) containing the Work(s) or portions thereof, or material from Company's Publication(s) in a collection, section, manner, or area identified as being associated with the applicable Publication in which the Work was Published. Any uses of Contributor's Works not otherwise expressly authorized herein shall be governed by a separate agreement between Contributor and Company.

9. **Foreign Rights:** Contributor hereby authorizes Company to allow any of Company's owned or licensed Publications outside of the United States, and/or foreign language Publications in the United States (in each case "Foreign Publication") to acquire, without payment of any fee, the exclusive first Publishing rights to each Work in the Foreign Publication's country and/or language, such exclusivity to last for  ninety (90) days after the applicable Work is first Published by the Foreign Publication. The Foreign Publication may acquire the rights by giving notice thereof to Company within thirty (30) days after the Work is first Published in the original Publication. The other Rights (not including exclusivity), Warranty and Miscellaneous provisions of this Agreement shall apply to such use by the Foreign Publication. The Foreign Publication's right to first Publish any Work optioned pursuant to this paragraph shall expire thirteen (13) months after the applicable Work is first Published in the original Publication

Exhibit 9
Page 10 of 18

10. **Right of First Refusal (Serial Rights):** Company shall have the right of first refusal on all serial rights to any books of Artist's works published under Contributor's or Artist's authority during the Term or within three (3) months thereafter; if Company does not purchase such rights in any instance, the rights may not be granted to another publisher on terms better (to the publisher) than those offered to or by Company (provided Company remains willing and able to honor such terms). The foregoing right is subject to Contributor's contract with the book's publisher, provided however that no provision in favor of another periodical publisher in any such contract shall override this provision.

11. **Reservation of Rights:** All rights with regard to the Works not expressly granted herein are retained by Contributor.

12. **Crediting:** a) Artist will be credited as the photographer, whenever reasonably possible.

   b) Artist's name and title ("Contributing Photographer") will be listed on the masthead of *Vanity Fair*; no other photographer will be given a greater title, or will be listed before Artist, as a photographer in the masthead of *Vanity Fair*. Vogue may list Artist's name on the masthead of Vogue.

   (c) Whenever Artist's photographs are distributed to the news media for promotion purposes, the Publication will notify the recipient that:

   (i)   Artist must be credited as the photographer;
   (ii)  the photographs are provided for one-time use only in connection with the issue of Publication they are being used to promote; and
   (iii) the cover of the issue of Publication that the photographs are being used to promote must be used in conjunction with the photographs.

   Company may on occasion deviate from items (c) (ii) and (c) (iii) if and when such deviation is reasonably necessary.

14. **Additional Projects**: If Contributor performs any Projects for other Company Publications during the Term without a contract signed by the party against whom enforcement is sought, the provisions of this agreement (other than the Fee and the first sentence of the Services section) will govern any such Project.

15. **Releases/Restrictions:**

   a. **Releases:** Company (or the applicable Publication) will have sole responsibility for obtaining any and all releases, permissions, consents and clearances required with respect to each person and each item of property depicted in the Works and (other than Artist herself) in the BTS Photography ("Releases") in connection with Company's use of the Works and the BTS Photography; and Company will hold Contributor harmless from and against any claims by any person arising from any failure by Company to obtain any such Release. Contributor will have sole responsibility for obtaining all

11

Exhibit 9
Page 11 of 18

Releases required with respect to Contributor's own separate use of the Works. Contributor may not agree to any restrictions, limitations, or right to review requested or imposed by any persons, including models, owners of property pictured in the Works, or others, other than solely in connection with Contributor's own separate use of the Works. Contributor will immediately advise Company of any such request or attempted imposition.

b. **Borrowing Property:** Contributor may not obtain or borrow any objects or property, lease any location, or enter into a legally binding commitment to a third party, on behalf of Company without first obtaining Company's express written consent.

c. **Commercial/Advertising Use:** Contributor will not allow any of the Works that are Published in a Publication, or any Works similar to such Works, to be used for any commercial, merchandising, or advertising purpose (including for posters) ("Commercial Exploitation") unless Contributor first obtains Company's written consent, which Company may withhold in its sole discretion. This requirement will continue to apply after the Company's period of exclusivity has passed, and/or (ii) after this agreement has expired or been terminated as long as Contributor and Company still have a professional contractual relationship. In the event this agreement expires or is terminated without such a new contractual arrangement being entered into, the prohibition on use of similar photographs shall expire three (3) years after the expiration or effective date of termination of the agreement. The term "merchandising" in this provision shall not be construed to include sale by Artist or Contributor of prints of photographs; and the sale of Artist's books and/or fine-art photographic prints, and advertising promoting such sales, and exhibitions of Artist's photographs, and advertising promoting such exhibitions, shall not be deemed Commercial Exploitation.

d. **Subsequent Use:** If Contributor makes any subsequent or other use of any Work, Contributor is solely responsible for obtaining any necessary releases from any models, persons, or owners of property pictured in the Work. Contributor will hold Company harmless from and against any claims by any person arising from any subsequent or other use.

e. **Credits on Subsequent Use:** In the event Contributor grants to any other person or entity the right to reproduce any photographs taken under this agreement, if permitted herein, Contributor will inform the subsequent purchaser of the relevant stylist and hair and makeup artists' names for the purpose of crediting, and Contributor will include in a contract with the subsequent publisher a requirement that it credit the applicable Publication as the original publisher, contiguous or close to each such photograph.

16. **Confidentiality:** The terms of this agreement, and the subject, contents, and circumstances of each Project and Work under this agreement and all details relating thereto, will be held confidential by Contributor and may be discussed by Contributor only with those individuals necessary for the preparation of the Work(s). Contributor will not allow anyone outside of the applicable Publication (including but not limited to the subjects and the subjects' representatives) to view the Work(s) or portions thereof before

12

Exhibit 9
Page 12 of 18

publication. Contributor shall be responsible for notifying and assuring the compliance of any assistants, service producers, and other third parties engaged by Contributor to the foregoing restrictions. Without limiting the generality of the foregoing, Contributor and any assistants, service providers, or other third parties working with Contributor may not tweet, blog about, post, reveal, or otherwise disseminate any of the information or materials covered by the confidentiality obligations herein, including but not limited to copies of photographs or descriptions of photo shoots. Specific information that enters or is already in the public domain through no fault or participation of Contributor, or any assistant, service provider, or third party working with Contributor, will not be subject to the confidentiality terms of this paragraph.

17. **Warranty:** Contributor represents and warrants that the Work(s) will be original work by Contributor, will not have been previously Published in any form, and, exclusive of the depictions of persons and items of property appearing in the Works, will not infringe the copyright of any third party or, to the best of Contributor's knowledge, defame, invade the privacy of, or violate any law or give rise to any claim by any third party. In addition, in the event any complaint relating to any Work is made by any third party at any time, whether by a formal legal claim or otherwise, Contributor will fully cooperate with Company in responding to and defending against such complaint or claim. **Company shall defend and indemnify Contributor against any claims and damages to the extent they arise directly as a result of Contributor's use of material as directed by Company or actions in following specific instructions from Company.**

18. **Independent Contractor:** Contributor is an independent contractor and will not be treated as or considered an employee of Company for any purpose, including but not limited to Company's employee benefits, unemployment taxes, Federal, state, and local tax purposes, the Federal Insurance Contribution Act, and income tax withholding at the source. Nothing herein shall create, expressly or impliedly, a partnership, joint venture, or other association between the parties to this Agreement. Contributor acknowledges and agrees that Contributor is not entitled to benefits under any employee benefit plan of the Company, even if (1) any court or other tribunal or government agency adjudicates or otherwise finds that Contributor is a common law employee of the Company or (2) Contributor is deemed to be a common law employee of the Company for any other purpose. Contributor represents that (x) Contributor is in full compliance with the immigration laws of the United States and will maintain such compliance while this Agreement remains in effect; and (y) Contributor is authorized to engage in business and/or provide services in the United States. Contributor is responsible for compliance with all applicable laws, rules, and regulations as concerns anyone Contributor uses to perform services under this Agreement. Contributor specifically acknowledges, and Company states, that Contributor has no actual, implied or apparent authority to act as an agent or employee of Company; to enter into any contractual commitments on behalf of Company; or to incur any obligations, debt or liability for Company. Contributor will indemnify Company with respect to all losses, claims, damages, expenses and liabilities (including reasonable attorneys' fees) arising out of any acts or omissions of Contributor that are not consistent with the terms of this paragraph, and, including any claim or liability for taxes, penalties and/or interest that may be assessed against Company by reason of Contributor and/or anyone Contributor uses to

13

Exhibit 9
Page 13 of 18

perform services under this Agreement being deemed an employee of Company.

19. **Termination/Breach:** If Contributor is not in material compliance with the terms of this agreement, and does not cure such breach within thirty (30) days of Company's written notice to Contributor of such breach, Company may, in addition to its other remedies, terminate this agreement and cease making the monthly payments. The Rights, Crediting, Releases/Restrictions (a), (c), (d), and (e), Confidentiality, Warranty, and Miscellaneous provisions shall survive any termination or expiration of this agreement. If Company fails to make payments to Contributor as required hereunder, and does not cure such failure with thirty (30) days of Company's receipt of Contributor's written notice to Company of such failure, Contributor may, in addition to Contributor's other remedies, terminate this agreement.

20. **Miscellaneous:** This agreement sets forth the entire agreement of the parties, supersedes all prior agreements between the parties with respect to the subject matter hereof, will not be binding on either party until fully executed by both parties and may not be altered except in a document signed by the party to be bound thereby. No contrary or inconsistent terms, conditions, restrictions, or other provisions in delivery memos, invoices, letters, or other documents will be binding on a party unless expressly agreed to in writing by that party. If any provision of this agreement is for any reason or in any jurisdiction held invalid or unenforceable, such fact will not affect any other provision hereof, and this agreement will thereafter be interpreted as if such provision had not been contained in the agreement, in such jurisdiction. This agreement and any rights hereunder are separately or collectively assignable in whole or in part by Company as part of a transfer or reorganization of any part of the business to which it relates. This agreement may not be assigned by Contributor unless to an entity owned and controlled by Contributor with written notice to Company; in all cases the Personal Guaranty shall remain in effect. Any notice to Company must be sent by Certified Mail, Return Receipt Requested, or delivered personally, and must be addressed to the attention of Contract Department, with a copy to Sabin, Bermant & Gould LLP, One World Trade Center, 44th floor, New York, NY10007, Attn: Jerry Birenz. This agreement will be governed by the laws of the United States of America and the State of New York applicable to contracts to be wholly performed therein to the extent permitted by the law of any jurisdiction in which the agreement is sought to be enforced. Any action against Company based on or alleging a breach of this agreement must be brought in the state or federal courts in New York, New York. Company may bring an action, including for tort, against Contributor in the state or federal courts in New York, New York, or wherever Contributor may be located.

21. **Power of Attorney:** If this agreement is executed by an agent or representative on Contributor's behalf, said agent or representative represents and warrants that it has full right and authority, pursuant to a currently valid Power of Attorney from Contributor, to make this agreement on behalf of and to bind Contributor, including the grant of rights and warranties and representations specified herein, and will indemnify Company against any claims of any nature arising from said agent or representative's execution of this agreement. Upon Company's request, said agent or representative will provide to Company the above-specified Power of Attorney.

14

Exhibit 9
Page 14 of 18

If you are in accord with the provisions of this agreement, please sign both copies of this contract and return them to me. I will then submit them for signature by an officer of Condé Nast and will return one copy to you.

Very truly yours,

AL STUDIO, LLC

BY: _____

DATE: 3/13/15

CONDÉ NAST

BY: _____

DATE: 3/18/15

15

Exhibit 9
Page 15 of 18

GUARANTY RIDER TO AGREEMENT DATED AS OF JANUARY 1, 2015 BETWEEN

**AL STUDIO, LLC AND CONDÉ NAST**

I, **Annie Leibovitz,** personally guaranty to Condé Nast ("Company") the performance by **AL STUDIO, LLC** of all of its obligations and liabilities under the contract dated **as of January 1, 2015** between **AL STUDIO, LLC** and Company. This guaranty relates to creation of works, payment of monies, performance of acts, restrictions, exclusivity, or any other obligations or liabilities of any nature under the aforesaid contract as if it stated that they apply directly to me. I hereby waive notice of any and all defaults on the part of **AL STUDIO, LLC** and agree that Company may look directly to me for fulfillment of this Guaranty, without any obligation to first request performance from or proceed against **AL STUDIO, LLC.** I understand that Company is relying on this Guaranty in entering in to the aforesaid contract.

**Annie Leibovitz**

3/13/15
Date

16

Exhibit 9
Page 16 of 18

**SCHEDULE A**

**[MAGAZINE LETTERHEAD]**

**Photographic Project Work Order**

**With respect to Agreement dated as of January 1, 2015 between
Contributor and Condé Nast**

Date: SAMPLE

Contributor: SAMPLE

Subject/Description of Project: SAMPLE

Shooting Dates: SAMPLE

Due Date for Initial Edit: SAMPLE

Due Date for Final Images:   SAMPLE

Fee: SAMPLE

Expenses: SAMPLE

Notes: SAMPLE

This project, and all material created and services rendered in connection with this project, are subject to the terms of Contributor's above-specified written agreement with Condé Nast, including but not limited to the grants of Rights set forth therein.  This Work Order is a Schedule to and an integral part of the aforementioned written agreement.

Any reimbursable expenses must be approved in writing in advance.

AL Studio, LLC                                  Condé Nast

By: _____                   By: _____

Date: __3/13/15__                             Date: _____

17

Exhibit 9
Page 17 of 18

## CONDÉ NAST

CHRISTOPHER DONNELLAN
Executive Director
Contracts and Rights

**Annie Leibovitz**
**c/o Andrew Wylie**
**The Wylie Agency**
**250 West 57th Street, Suite 2114**
**New York, NY 10107**

March 10, 2015

Re: Travel for Condé Nast Commissioned Shoots

Dear Annie,

This letter shall confirm that, provided you remain flexible in your travel plans associated with Condé Nast commissioned shoots associated with your contract dated as of January 1, 2015 your personal travel for such shoots will be booked in First Class, when available.  Should First Class not be offered for such flights, you will be booked in the highest level of service offered.

Please do not hesitate to contact me with any questions in this regard.

All best,

1 World Trade Center, New York, NY 10007 | ☎ 212.286.4403 | ✆ 917.374.6258 | chris_donnellan@condenast.com

Vogue | Vanity Fair | Glamour | Brides | Self | GQ | The New Yorker | Condé Nast Traveler | Details | Allure | Architectural Digest
Bon Appétit | Epicurious | Wired | W | Style.com | Golf Digest | Golf World | Teen Vogue | Ars Technica | CNE

Operating in 30 markets worldwide

Exhibit 9
Page 18 of 18

# ARTIST AGREEMENT

This Artist Agreement (the "Agreement") is made as of <u>November 12, 2014</u> by and between Trunk Images, Inc. d/b/a Trunk Archive ("Trunk Archive") and Annie Leibovitz ("Artist"). This Agreement shall confirm the terms upon which Trunk Archive will be the worldwide representative for licensing certain copyrighted images in and/or to which Artist holds the copyright or reproduction rights.

1.      <u>Grant of Rights</u>: Subject to the terms and conditions of this Agreement, Artist hereby grants to Trunk Archive the exclusive worldwide right to license, market, and promote the Licensed Images (as defined below) for all uses in any and all media. Notwithstanding the foregoing, nothing contained herein shall restrict Artist's right to collaborate with or deliver any Licensed Images to Robert Pledge and/or Contact Press Images for use in special projects or other endeavors Artist deems of interest. Artist shall make best efforts to notify Trunk Archive in advance if the use of a Licensed Image by Robert Pledge and/or Contact Press Images may conflict with the rights granted herein.

2.      <u>Licensed Images</u>: The images subject to this Agreement shall be those images provided to Trunk Archive by Artist or Artist's authorized agent for representation hereunder (the "Licensed Images"). For clarification purposes, any sale or license of the Licensed Images by Trunk Archive must be approved by Artist in advance.

3.      <u>Licenses and Releases:</u> Trunk Archive will be responsible for negotiating and executing licenses on Artist's behalf, securing any Talent or Model releases, and collecting and disbursing revenues or fees associated with any release or license.

4.      <u>Sharing of Revenues</u>: Artist shall be entitled to sixty percent (60%) of all revenues received by Trunk Archive from exploitation of the rights granted hereunder. Collected funds shall be paid to Artist at least once per month in U.S. Dollars via ACH transfer, wire transfer, or check. Trunk Archive will be diligent in its collection efforts, however cannot guarantee collection of all funds and will only be required to make payment on collected funds.

5.      <u>Term and Termination:</u> The initial term of this Agreement shall begin on the date first set forth above, and will continue for a period of one (1) year. Following the initial term period, the Agreement shall remain in effect until such time as either party provides thirty (30) days written notice of termination to the other party. Upon termination of this Agreement, Artist will continue to honor any license agreement entered into pursuant to this Agreement.

6.      This Agreement shall not be capable of assignment by either party without the written consent of the other party. This Agreement shall be binding upon Artist, Trunk Archive, and their executors, administrators, successors, affiliates, and permitted assigns, as applicable. This Agreement may not be amended, modified, or changed in any respect unless such change is in writing and signed by the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**TRUNK ARCHIVE**

By: _____
    Name: Matthew Moneypenny
    Title: CEO

**THE ARTIST:**

By _____  11/14/14
Annie Leibovitz

Exhibit 10
Page 1 of 1

Artist Name: Annie Leibovitz
Address: c/o Trunk Archive 190 Bowery, fl 2, New York NY 10012
Email: via LK@trunkarchive.com

To Whom It May Concern:

This letter is to confirm that Great Bowery, Inc. d/b/a Trunk Archive ("Trunk Archive"), including its attorneys, recovery partners, and agents, are hereby authorized by me to act on my behalf in all matters relating to copyright infringement of my work. Such authorization includes sending cease and desist letters, initiating and prosecuting litigation or other formal proceedings in my name and on my behalf as a named claimant or co-claimant in relevant courts, administrative bodies or private forums in order to enforce my copyrights, negotiating settlement terms/conditions and monetary restitution, receiving payments, seeking, obtaining and enforcing judgments and signing all documents and providing all reasonable cooperation relating to these matters. In executing this document, I represent and warrant that I am the holder of all rights, title and interest in and to the copyrighted works for which Trunk Archive will be acting on your behalf. I further acknowledge and agree that neither my other agents nor I will separately attempt to settle or resolve any instances of infringement without first notifying Trunk Archive thereof in order to ensure that the work of Trunk Archive and its attorneys, recovery partners, and agents on your behalf is not undermined. Nothing herein should be interpreted to obligate Trunk Archive or its attorneys, recovery partners or agents to take any particular action with respect to any particular infringement or enforcement opportunity.

By: _____
ARTIST:   Annie Leibovitz

Date: 6/12/2018

Exhibit 11
Page 1 of 1